## COLLINS et al. v. UNITED STATES.
### No. 6580.

Circuit Court of Appeals, Fifth Circuit.
May 31, 1933.

Bart A. Riley, of Miami, Fla., for appellants.

W. P. Hughes, U. S. Atty., of Jacksonville, Fla.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

FOSTER, Circuit Judge.

Appellants, William Collins, Lee Brewer, and Fred Walton, were convicted on an indictment which charged, in the first count, a conspiracy between them and a number of others to violate the Customs Laws (19 USCA § 1 et seq.) and the National Prohibition Act (27 USCA § 1 et seq.), by importing and transporting intoxicating liquor for beverage purposes, and, in the fifth and sixth counts, the transportation, in separate railroad cars, of intoxicating liquor from Sherman in Okeechobee county, Fla., to Baldwin, Duval county, Fla. Only appellants were put on trial. Since the filing of the record in this court, Walton has dismissed the appeal as to him.

A number of errors are assigned, but only two are pressed on appeal. As to the first of these, appellants contend: That Brewer and Collins were tried prior to the trial of the case at bar on an indictment charging them with a conspiracy similar to the conspiracy charged in this case but with other defendants; that said trial resulted in a mistrial, and the same witnesses were used by the government and the same facts testified to were used in this case; that this is so inconsistent that the testimony was inadmissible. . This contention is entirely without merit. The government was at liberty to use the same witnesses in another case where the testimony was relevant.

The second error urged is to the failure of the trial court to direct a verdict of acquittal. It appears from the bill of exceptions that at the close of the government's case defendants moved for a directed' verdict. It was granted as to counts 2, 3, and 4 of the indictment, which charged separate acts of transportation by automobile trucks, but was denied as to the three counts on which the conviction was had. After the denial of this motion, appellants all took the stand in their own behalf, and evidence from a number of witnesses was introduced as to the good character of Collins and Brewer. The motion to direct was not renewed.

It is the general rule that the introduction of evidence by the defendant waives a motion for verdict made at the close of the plaintiff's case. Smith v. U. S. (C. C. A.) 63 F.(2d) 110. However, the bill of exceptions contains all the evidence, and is authenticated by the signature of the judge. It is well settled that, where there is no substantial evidence to support a conviction in a criminal case, it is the duty of the trial court to direct a verdict of acquittal, regardless of whether a motion to that effect is made. If from the record or facts of which the court may take notice it appears that the conviction cannot be sustained, plain error appears on the record, and the judgment will be reversed. Clyatt v. U. S., 197 U. S. 207, 25 S. Ct. 429, 49 L. Ed. 726; Gambino v. U. S., 275 U. S. 310, 48 S. Ct. 137, 72 L. Ed. 293, 52 A. L. R. 1381. Having regard for the just cited authorities, we have examined the facts appearing in the record with the view of ascertaining whether reversible error is shown.

The record shows the following facts: Collins was the sheriff of Okeechobee county, Fla. Brewer was his only active deputy. Thomas was superintendent of a lumber mill at Sherman in Okeechobee county. Davidson was employed as a shipping clerk at the said mill. Thomas testified that in the latter part of August, 1929, Collins came out to the mill and introduced two strangers, whose names he did not remember. They wanted to arrange for buying lumber to be loaded in box cars and bulkheaded and for a supply of about 25 sacks of sawdust and ten gallons of turpentine for each car, the cars to be put on a siding and liquor to be stored in them with the lumber. He did not see how he could make the arrangements without involving the mill, and they did not trade at that time. About the middle of October, 1929, Brewer and Collins came to the mill with two strangers, one of them he did not remember, but the other was Walton. Collins introduced them. Collins and Brewer stepped aside, and Walton talked to him about the shipments of liquor in box cars containing lumber. He was afraid to enter into any such arrangement, but talked with Collins about it, and told him he was afraid to do it. Collins told him it was all right, and that he and his deputy would give protection in their county, and the liquor trucks would be escorted by him or his deputy. After that he made the arrangement with Wal-

ton for the shipments of liquor. Davidson testified that he first met Walton about the 1st of October, 1929, and Walton made arrangements with him to superintend the loading of the lumber into cars after having first talked with Thomas. Thomas was present when the arrangements were made. Collins and Brewer told Davidson they were to patrol the road between the county line of St. Lucie county and Okeechobee City and escort the trucks into the road going to Sherman, so that, if they were caught by government agents, they would already be under seizure. After the trucks turned into the road at Sherman, they were to return to the county line of St. Lucie county and wait there for the other trucks. The mill is about 5½ miles off the state road B, but there is a dirt road cut-off. The cars were loaded with the liquor at night, packed in the sawdust, and turpentine sprinkled over it. Walton would usually come in on the last truck to see that everything was O. K. and then pay for the lumber and the labor. He was paid $250 for each car. About 500 cases of liquor were loaded into a car, packed in sacks, one-half case to the sack. He talked to Collins about the liquor being shipped and Collins said he thought they would get by with it as long as the road was being patrolled the way it was. After the two cars were seized at Baldwin, he then talked to Collins, and Collins said that everything would be all right if everybody kept his mouth shut. He did not know what Collins and Brewer got, but he talked to Brewer, and he said he was getting money out of it, and was going to buy a farm. At that time they were about 200 yards from one of the box cars on a side road, and he was waiting for another truckload of liquor. His share of the payments for the shipments of various cars amounted to about $1,200. It further appears that from time to time after the agreement was made lumber was purchased at the mill and a number of cars were loaded with it and with liquor and shipped. Walton was active in loading the cars. Davidson procured the bills of lading for them. The last two cars shipped were seized at Baldwin and formed the basis of the transportation charges. Neither Thomas nor Davidson was indicted. There was other evidence tending to show the active participation of both Collins and Brewer in convoying the shipments of liquor by truck through Okeechobee county to a point on the state highway near the mill, and that both had knowledge that shipments were being made and took no steps to prevent them.

Under the provisions of section 332, Criminal Code (18 USCA § 550), one who aids, abets, counsels, commands, induces, or procures the commission of an offense is a principal, and may be indicted as such. It is not necessary to prove he was present when the crime was committed or actively participated therein. He must be considered as having aided and abetted the commission of the crime if what he did made possible and tended to cause its commission. Jin Fuey Moy v. U. S., 254 U. S. 189, 41 S. Ct. 98, 65 L. Ed. 214; Hume v. U. S. (C. C. A.) 118 F. 689; Billingsley v. U. S. (C. C. A.) 249 F. 331; Colbeck v. U. S. (C. C. A.) 10 F.(2d) 401; Cook v. U. S. (C. C. A.) 28 F.(2d) 730.

It is true there was no evidence whatever to show that either Collins or Brewer was actively engaged in the shipments of the two carloads of liquor, and they denied any participation And it may be conceded that, if an officer has knowledge that a crime is to be committed or has actually been committed, and merely stands by and does nothing to prevent the commission or to apprehend and punish the offenders, he is not necessarily guilty of aiding and abetting its commission, although he may be guilty of malfeasance in office. But, where the officer beforehand actively participates in the arrangements for committing a crime and promises protection to others in its commission, the situation is different, and it cannot be said that he did not aid and abet its commission. The conclusion is irresistible that, if Collins and Brewer had not introduced Walton to Thomas and assured him protection in their county, the arrangements for loading and shipping the liquor in cars would not have been made, and, further, that, if Collins and Brewer had not protected the movement by truck, but had performed their duties as officers of the law, the shipments by railroad could not have been made. Sherman, where the freight cars were loaded, is in Okeechobee county and within the bailiwick of the sheriff. Collins and Brewer both knew the cars were being loaded and shipped. They were close at hand, and could have prevented it. By previous arrangement they did nothing. It follows there was sufficient evidence to go to the jury on the two counts charging the substantive offense of transportation.

The court charged the jury, in substance, that, if the sheriff and his deputy knew about the liquor being transported and entered into an agreement to protect the persons transporting it while they put it into cars, they were to be considered as principals.

It does not appear that any objection was made to this part of the charge nor was any contrary instruction requested, although eleven special charges were presented to the court. Regardless of that, there is no doubt the charge correctly stated the law. The verdict was responsive to the charge, and there was sufficient evidence to support it.

The record presents no reversible error. Affirmed.