**Jesse Lee ROBINSON and Tom Lowe, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 16181.**

United States Court of Appeals Ninth Circuit.

Jan. 7, 1959.

Jesse Lee Robinson, in pro. per.

Laughlin E. Waters, U. S. Atty., Robert D. Hornbaker, Robert John Jensen, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS, BARNES and HAMLEY, Circuit Judges.

BARNES, Circuit Judge.

Appellants were convicted by the court below, sitting without a jury, on each of an indictment's two counts. It was charged in Count One that appellants did, on November 21, 1957, after im-

portation, knowingly and unlawfully receive, conceal and transport, and facilitate the concealment and transportation of a certain narcotic drug, namely, 150 ounces of heroin, in violation of 21 U.S.C.A. § 174; and in Count Two, that on the same date the appellants did, after importation, knowingly and unlawfully sell and facilitate the sale of a certain narcotic drug, namely, 150 ounces of heroin, in violation of 21 U.S.C.A. § 174.[1]

The district court sentenced appellant Lowe to five years on each count, to run concurrently, and appellant Robinson to ten years on each count, to run concurrently.

The district court had jurisdiction. 18 U.S.C. § 3231. Upon timely appeal, this Court likewise has jurisdiction. 28 U.S.C. § 1291.

The cause was submitted to this Court without oral argument. In briefs on file, three grounds are urged for reversal. The first is that the evidence was insufficient, as a matter of law, to convict the defendant Robinson; the second, that cross-examination of the informer, Cammack, was unduly limited; the third, that the district court erred in admitting rebuttal evidence upon a collateral matter.

 Appellants recognize that each of their last two points is a matter ordinarily lying within the discretion of the trial court. Although seeking to find, here, the basis for an exception to such usual rule, the defendant can point out no abuse of discretion, nor any reason why such discretion, resting with the trier of fact, should be disturbed by us. We find no error on these points.

 The first ground of claimed error requires a close examination of the facts. We agree with the government's position that the evidence is required to be viewed in the light most favorable to it. Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; Reynolds v. United States, 9 Cir., 1956, 238 F.2d 460; Arena v. United States, 9 Cir., 1955, 226 F.2d 227, certiorari denied, 1956, 350 U.S. 954, 76 S.Ct. 342, 100 L.Ed. 830.

One Cammack had been a long-time heroin addict. He was released from the county jail on the 20th of November, 1957, after finishing a county jail sentence. At the elevator leaving the county jail, he was met by federal officers who took him to the Federal building; they told him there was an indictment against him, and asked if he wanted to cooperate by making a purchase of heroin. He said he did, and was released on his own recognizance. He called the federal narcotic officers the next day and was asked to meet Officer Richards. Richards asked him to call Jesse Robinson and see if he (Cammack) could make a purchase of heroin. Officer Richards dialed Robinson's telephone number. Officer Richards told him to ask for Jesse and to ask for "half a pint."

On November 21, 1957, Cammack, the informer, testified he talked to Robinson on the telephone, after the police officer had dialed the number, telling Robinson he wanted "half a pint" and was invited to Robinson's house; that Cammack there again expressed a desire for one-half an ounce of heroin; that he was told by Robinson to call Tom Lowe and was given Tom Lowe's telephone number; that that same day, having lost Lowe's telephone number, Cammack called Robinson again to reobtain Lowe's number; Cammack called Lowe (to whom he had talked before) and told Lowe he wanted "half a pint" and was instructed to meet Lowe at Cloverdale and Adams Streets where he, Cammack, gave Lowe $100 of government money and was told to drive to 2100 Cloverdale and look beside the curb; that he, Cammack, went there and picked up from the street beside the curb a package containing a white napkin with a yellow balloon in it; that this package was turned over to the government agent.

It was stipulated that the powdery substance allegedly found within the balloon was heroin.

---

1. 35 Stat. 614 (1909), as amended.

Cammack testified that on November 22, 1957, he called Robinson, asked to get "a pint" and was told to call Tom Lowe. Cammack said: "That was real nice yesterday," and Robinson said, "Yes, I know it." Cammack made no further personal contact with Lowe after November 21st, 1957, except by telephone. Five telephone calls on three subsequent days produced no heroin.[2]

Cammack later was sentenced to eight years in prison on his guilty plea to a federal charge of sale of narcotics. He had previously been convicted of another narcotic felony.

After his agreement to "cooperate" with the federal officers on November 20th, Cammack was temporarily released[3] until January 16th, 1958. Cammack was never promised any leniency for his cooperation, but he "hoped for some."

Officer Richards testified Cammack had stated that he had been purchasing narcotics from Robinson, and that he believed he might purchase some more from him.[4] Cammack did not testify as to this and was not asked.

■ The government impliedly admits that there is no sufficient evidence to convict Robinson on the first count of possession or concealment or transportation of the narcotics when it calls this Court's attention to Robinson's conviction on Count Two with a similar concurrent ten year sentence, and says: "Since the evidence on Count Two was sufficient to convict Robinson, the court need not inquire into the sufficiency of the evidence on Count One."

We agree with the principle of law enunciated, if we accept as correct the government's premise that the evidence was sufficient to convict Robinson on Count Two.

Appellee vigorously contends that Robinson (a) facilitated the purchase from Lowe, and (b) at the least, aided and abetted it.[5] Appellee relies on Pon Wing Quong v. United States, 9 Cir., 1940, 111 F.2d 751, 756, wherein an express company employee took a sticker from a box in a customs corral which had passed customs inspection, and placed it on a trunk which had not been inspected, and which he knew contained opium. There we held (and would now reaffirm) that under such circumstances the accused "facilitated" the transportation of opium into this country. But that case does not

2. We need not pass here on the admissibility of telephone conversations had on November 22, 1957, and subsequent days, to prove either the possession or sale of narcotics occurring on November 21, 1957. No objection was interposed to this line of questioning. They were not offered to prove system or intent or to come within other exceptions to the general rule. See in this regard, Hubby v. United States, 5 Cir., 1945, 150 F.2d 165, 167.

3. Testimony of Cammack on cross-examination, Tr. pp. 62–63, 73:
"Q. Did you post a bond, to your knowledge? A. No, I didn't.
"Q. You were just let out on the street? A. Yes, I was.
"Q. On condition that you cooperate and set somebody up for Richards and Landry? [narcotics officers] A. That is correct.
"Q. That was the deal? A. Yes."
Cammack was taken before a United States Commissioner, and let out on his "O.R."

"Q. And were there any representations made to the Commissioner that you were going to work for the Government? A. Yes, there was.
"Q. I see. And this was your understanding, that if you worked for the Government, there wouldn't be any bail required, is that right? A. I was told I would be taken out.
"Q. Pardon? A. I was told I would be let out on my O.R.
 * * * * *
"Q. In other words, they wanted you to 'make' somebody is that right? A. That is correct."

4. This statement was hearsay as to both appellants. No objection was made to the question which provoked the answer, and no motion to strike the hearsay evidence was made as to either appellant.

5. 18 U.S.C. § 2(a):
"Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

present comparable facts to those here established.

Did Robinson "facilitate" the purchase from Lowe by giving Cammack Lowe's telephone number? Appellee argues that "Robinson made the sale less difficult, and he therefore facilitated the sale." But so did the telephone company in providing Lowe with a telephone, and in listing his telephone at a certain number, and in publishing the telephone book. So did the manufacturer of the automobile used to effect the contact; not to mention the manufacturers of the white napkin, and the yellow balloon.

We do not find Morei v. United States, 6 Cir., 1942, 127 F.2d 827, upon which appellant largely relies, as inapposite as the government contends. In attempting to differentiate it, appellee states:

"The only case cited by appellant, Morei v. United States, supra, is not in point. There, the Court said that 'the only thing Dr. Platt did was to give Beach the name of Morei as a man from whom he might secure heroin to dose horses in order to stimulate them in racing' ([at] p[age] 832). There, the facts showed that Robinson did more than that; he associated himself with the venture. He therefore aided, abetted, counseled, commanded, induced and procured the sale."

This is mere verbiage. Nowhere does the appellee point out where and how Robinson "did more"; how he "associated himself with the venture." Was it by saying, "Yes, I know it," when Cammack said: "That was real nice yesterday"? "That" which was "real nice" could have referred to many things other than heroin.

Appellees also cite Judge Learned Hand in United States v. Peoni, 2 Cir., 1938, 100 F.2d 401, 402, where it was said that in order to aid and abet another to commit a crime, it is necessary that a defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." We can-

not find in the evidence before us anything that indicates Robinson wished to bring about the sale Lowe made to Cammack. He may very well have, in view of his alleged previous sales, but there is no proof of his wishes as to this sale! There is not the slightest evidence that Robinson ever had *possession* of the narcotic, *participated* in its sale, or *received* any of the proceeds thereof.

In Morei v. United States, supra, the court said, as to the facts [127 F.2d 828]:

"The Government claims that an informer, named Beach, was sent to buy narcotics from Dr. Platt; that the doctor gave the informer the name of defendant Morei in Cleveland as the man who could get what he wanted; that Morei, aided by * * * Evans, produced the drug; and that the three defendants were guilty as principals in committing the offense of purchasing and selling narcotics."

Id., 127 F.2d at page 830. The Court then says:

"A person is not an accessory before the fact, unless there is some sort of active proceeding on his part; *he must incite, or procure, or encourage the criminal act, or assist or enable it to be done, or engage or counsel, or command the principal to do it*. Halsbury, supra, § 531. Strictly speaking, in order to constitute one an accessory before the fact, there must exist a community of unlawful intention between him and the perpetrator of the crime. The concept of an accessory before the fact presupposes a prearrangement to do the act [see West v. State, 25 Ala.App. 492, 149 So. 354]; and to constitute one an aider and abettor, he must not only be on the ground, and by his presence aid, encourage, or incite the principal to commit the crime, but he must share the criminal intent or purpose of the principal. Whitt v. Commonwealth, 221 Ky. 490, 298 S.W. 1101. If Dr. Platt is guilty of the offense

charged, it is because he was an aider and abettor, or an accessory before the fact. It is true that, since enactment of statutes making aiders and abettors, and accessories, liable as principals, many courts have indiscriminately referred to accessories as aiders and abettors. In this case, such a matter is unimportant. Thus, it was said in Parisi v. United States, 2 Cir., 279 F. 253, that it is not necessary that one who aids and abets the commission of a crime, need be present when the crime is committed; but this is not entirely accurate in the strict sense of the legal definitions. In Jin Fuey Moy v. United States, 254 U.S. 189, 41 S.Ct. 98, 65 L.Ed. 214, cited in support of the statement made in the foregoing case, it was merely said that one may take a principal part in a prohibited sale of narcotics by unlawfully issuing a prescription.

"The Government emphasizes that the statute, Cr.Code § 332, 18 U.S.C.A. § 550, provides that one who induces or procures 'the commission' of an offense, is guilty as principal. This is true; but it certainly cannot be concluded that *procuring the commission* of an offense is different from 'procuring an offense,' or procuring another to commit an offense. It is not to be assumed that Congress, in defining as a principal, one who 'procures the commission of an offense,' and using almost the identical language by which the common law defined aiders, abettors, and accessories, was providing for a new crime theretofore unknown. If the criterion for holding that one is guilty of procuring the commission of an offense, is that the offense would not have been committed except for such a person's conduct or revelation of information, it would open a vast field of offenses that have never been comprehended within the common law by aiding, abetting, inducing or procuring. As Judge Hand remarked, in United

States v. Peoni, supra [100 F.2d 402], 'It will be observed that all these definitions have nothing whatever to do with the probability that the forbidden result would follow upon the accessory's conduct; and that they all demand that he in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed. All the words used—even the most colorless, "abet"—carry an implication of purposive attitude towards it.' Appellee cites Collins v. United States, 5 Cir., 65 F.2d 545, in which it was said that one must be considered as having aided and abetted the commission of a crime if what he did made possible, and tended to cause, its commission. But this is broad language and is susceptible of misconstruction. * * *

"Of the charge that he was guilty of purchasing and selling narcotics, based on the theory that he had aided and abetted, or was an accessory before the fact, in the commission of these acts, there was no evidence to convict Dr. Platt. The court dismissed the conspiracy count. There was no evidence that Dr. Platt planned with the other defendants or conspired directly or indirectly with them, or had any understanding with Morei to buy or sell narcotics. There was no community of scheme between him and the other defendants. They shared in no common intent or plan, nor was there any prearrangement or concert of action. Dr. Platt was paid nothing and it is not claimed that he asked for any remuneration or expected to receive anything from the claimed transaction. Accepting the facts as contended for by the prosecution— which are squarely contradicted by the defendant—the only thing Dr. Platt did was to give Beach the name of Morei as a man from whom he might secure heroin to dose

horses in order to stimulate them in racing. This is not the purposive association with the venture that, under the evidence in this case, brings Dr. Platt within the compass of the crime of selling or purchasing narcotics, either as principal, aider and abettor, or accessory before the fact." [Emphasis added.] Id., 127 F.2d at pages 830–832.

In United States v. Moses, 3 Cir., 1955, 220 F.2d 166, 168, the appellant had introduced undercover agents to the heroin seller, and had vouched to the seller for their *bona fides* in seeking the drug. The circuit court reversed her conviction, saying she had facilitated the *purchase*, but not the *sale* of the heroin, and:

> "There was nothing to show that she was associated in any way with the enterprise of the seller or that she had any personal or financial interest in bringing trade to him. Although appellant's conduct was prefatory to the sale, it was not collaborative with the seller. For this reason the conviction cannot be sustained."

Id., 220 F.2d at page 168. Cf. Alexander v. United States, 8 Cir., 1957, 241 F.2d 351, where facts showed participation. See also, Pereira v. United States, 1954, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435; Nye & Nissen v. United States, 1949, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919. And see dissent of Stewart, J. in Logsdon v. United States, 6 Cir., 1958, 253 F.2d 12, 16.

We think that the Morei decision is sound law, and its principle controlling here.

■ The judgment of conviction of the defendant Robinson as to both counts is *reversed*. The judgment of conviction of the defendant Lowe as to each count is *affirmed*.

■ The order admitting the defendant Lowe to bail is hereby revoked effective immediately. Fed.R.Crim.P. 46 (a) (2), 18 U.S.C. In view of his conviction and the affirmance here, his bail in the amount of $1,500 is unreasonably low. This action is without prejudice to Lowe's making a new application for bail in the district court where the likelihood of his responding to bail in a substantially larger sum may be considered, if Lowe desires to file a petition for rehearing here or a petition for certiorari in the Supreme Court.