James Leroy **TEASLEY**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 16908.

United States Court of Appeals
Ninth Circuit.

July 10, 1961.

James T. McDonald, San Francisco, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Meyer Newman and J. Brin Schulman, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before HAMLEY and JERTBERG, Circuit Judges, and ROSS, District Judge.

JERTBERG, Circuit Judge.

Appellant was convicted by a jury on three counts of violating Title 21 U.S.C. A. § 174.[1] Count three of the indictment alleged the sale and facilitation of sale on or about July 16, 1959 by appellant and co-defendant Skinner of a stated quantity of heroin. Count four of the indictment alleged that on or about July 16, 1959, the appellant and co-defendant Skinner concealed, transported and facilitated the concealment and transportation of the heroin described in count three of the indictment. Count five of the indictment alleged the sale and facilitation of sale on or about July 22, 1959 by appellant and co-defendant Skinner of a stated quantity of heroin. Appellant was committed to the custody of the Attorney General of the United States for a period of twelve years on each of said three counts. The sentences, however, on all three counts were fixed to run concurrently.

Jurisdiction of the district court was based upon Title 21 U.S.C.A. § 174. This Court has jurisdiction under Title 28 U.S.C.A. §§ 1291 and 1294(1).

On this appeal appellant specifies as errors:

1. That the arrest of appellant was unlawful, the subsequent search of his premises without a search warrant was unlawful, and that certain evidence—the fruits of such search—was improperly received into evidence;

2. That the fruits of the search received in evidence against the appellant was evidence of an independent offense not charged in the indictment, and was not relevant or material to the offenses charged, and the receipt in evidence thereof was prejudicial;

3. That no possession of heroin by appellant was shown so as to give rise to the statutory presumption of illegal importation.

In view of appellant's contentions on this appeal, it is necessary to review the evidence in detail in order to place in proper focus the errors specified by the appellant. Evidence must be viewed in the light most favorable to support the judgment. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Robinson v. United States, 9 Cir., 1959, 262 F.2d 645; Williams v. United States, 9 Cir., 1960, 273 F.2d 781; Alverez v. United States, 9 Cir., 1960, 282 F.2d 435.

The principal evidence against appellant consisted of the testimony of one Diamond, a special employee of the government. Diamond testified that he first met appellant on July 14, 1959, on which date he was looking for one Perronneaux, who was charged in count one of the indictment with having sold and facilitated the sale to Diamond on or about July 14, 1959 of a stated quantity of heroin. It appears that Perronneaux lived in the apartment above that of the appellant. On this occasion Diamond engaged in a brief conversation with appellant, which terminated upon the arrival of Perronneaux.

Diamond testified that on July 15, 1959, he received a telephone call from a person identifying himself as the appellant, inquiring as to the transaction between Perronneaux and Diamond, and Diamond indicated that he was dissatisfied with the quantity of heroin received for the price paid to Perronneaux, and wanted to

1. § 174. "Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned * * *

"Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

"get straight." Appellant said, "Well, if you do call me."

Diamond testified that on July 16, 1959, he accompanied a federal agent, one Richards, to a public telephone. The federal agent dialed a number, and Diamond spoke to a person identifying himself as appellant. Diamond stated that he wanted a "whole thing", meaning an ounce. After two phone calls to Diamond at the home of federal agent Richards, Diamond was told by appellant to bring his purchase money to a designated street corner. After being searched, supplied with advance government funds, and equipped with a Schmidt listening device, Diamond went to the corner and met two men driving a 1955 Chevrolet. He identified the occupants of the car as appellant and co-defendant Skinner. At this time Diamond gave appellant $300 and appellant told him he would contact him when the narcotics were to be delivered. Diamond testified that he waited all afternoon at the home of federal agent Richards, where he received several telephone calls from appellant. Finally appellant directed him to a supermarket parking lot. There Diamond was met by Skinner, who was driving the same 1955 Chevrolet in which appellant and Skinner had appeared previously on the same day. At this meeting Skinner handed Diamond a package later found to contain narcotics.

Diamond testified that on July 22, 1959, federal agent Richards again dialed a number from a public telephone and again Diamond talked to appellant, telling him he wanted to buy $600 worth of narcotics. Appellant directed him to the same parking lot where the previous transaction was completed. There appellant received $600 in government advance funds from Diamond, but refused to allow Diamond to accompany him. Diamond remained in the company of the agents, making several phone calls to appellant's apartment in an unsuccessful attempt to locate him. Finally, Diamond went to appellant's apartment. Appellant returned and told Diamond to leave and call him later. When Diamond did so,

appellant directed Diamond to the same parking lot where previous meetings were held. While Diamond waited, appellant appeared in the same 1955 Chevrolet and told Diamond to "hold tight". Shortly thereafter Skinner and a woman reappeared in the same automobile and handed appellant a package found to contain narcotics.

Diamond's testimony was corroborated by agents who testified that they observed the meetings above described from vehicles parked nearby and overheard offers to sell narcotics on the Schmidt listening device which was concealed on the person of Diamond. Appellant, testifying on his own behalf, admitted knowing Diamond and admitted seeing him on the dates on which Diamond testified that the sales occurred, but he gave a different version of events, denying any participation in narcotics sales.

The circumstances of arrest are not substantially disputed. On July 22, 1959, shortly after co-defendant Skinner handed Diamond the package containing narcotics in the parking lot, he and his female companion were arrested as they emerged from the market. After informing Skinner and his girl friend of their constitutional rights, agents accompanied Skinner to appellant's apartment. Skinner had a key to the apartment. There is evidence in the record indicating that Skinner was living with appellant in the apartment. Skinner opened the door and agents immediately arrested appellant. Agents testified that appellant was observed attempting to stuff something down into a couch. These articles were retrieved, and a search of appellant's apartment produced a partially smoked cigarette, a partially smoked marihuana cigarette, and a package of white powder. Appellant was not charged with any crime relating to the possession of these items, and testimony as to their discovery was introduced into evidence over appellant's objection.

A search of appellant's person produced $180 in cash. Agents testified that these bills were part of the advance government funds given to Diamond to pur-

chase narcotics. Agents testified that before the bills were given to Diamond they had been treated with fluorescent powder, and that the bills recovered from appellant showed the presence of such powder when exposed to ultraviolet light. Also, agents compared the serial numbers on the bills with a list compiled before the bills were given to Diamond, and they were found to correspond. Appellant testified that he received $180 from Diamond, but that $50 thereof was a loan, and the remaining amount was given to appellant by Diamond for safe-keeping because Diamond was going swimming.

We will now consider appellant's specifications of error.

■■ Admittedly the arrest of appellant made by federal and state officers was without a warrant of arrest. Appellant first argues that the entry by the officers into appellant's apartment was unauthorized, unlawful, and in the nature of a trespass. Appellant further contends that the arrest subsequent to the entry was without probable cause. Under such circumstances, appellant claims the rights guaranteed to him under the Fourth Amendment to the Constitution of the United States were violated.[2] The arresting officers did not force or break their way into appellant's apartment, but entered the apartment with Skinner who had a key to appellant's apartment. Nothing in the record indicates that Skinner obtained the key unlawfully, nor that the arresting officers forced Skinner to admit them to appellant's apartment. Appellant's own testimony indicates that Skinner was his friend, and that Skinner spent much time in appellant's apartment, taking care of appellant while he was sick. There is other testimony that Skinner was or had been living with appellant in appellant's apartment for some week or ten days prior to appellant's arrest. Appellant claims that the entry of the officers into appellant's apartment was an unlawful invasion under the rationale of Weeks v. United States, 1914, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652. In the Weeks case, the defendant was arrested by a police officer without a warrant at the Union Station in Kansas City, Missouri. Other peace officers had gone to the house of the defendant and, being told by a neighbor where the key was kept, found it and entered the house. This factual situation clearly distinguishes Weeks from the facts in the instant case. In the instant case, the compelling inference is that the officers gained entrance to appellant's apartment from one who was lawfully entitled to enter such apartment and to consent to the entry into the apartment by others. Under these circumstances, the entry into the apartment by the officers was not in the nature of a trespass, nor was such entry in violation of the pertinent provisions of the Fourth Amendment. Cf. Stein v. United States, 9 Cir., 1948, 166 F.2d 851, certiorari denied 334 U.S. 844, 68 S.Ct. 1512, 92 L.Ed. 1768. Although we have responded to appellant's assertion that the entry to his apartment was a trespass and that *therefore* the subsequent search and seizure were illegal, we do not mean to intimate that the mere fact that there has been a trespass by law officers results in making any subsequent search and seizure invalid and the evidence obtained thereby inadmissible. See Koth v. United States, 9 Cir., 1926, 16 F.2d 59, 61; Giacona v. United States, 5 Cir., 1958, 257 F.2d 450, 456, certiorari denied 1958, 358 U.S. 873, 79 S.Ct. 113, 3 L.Ed.2d 104. The Fourth Amendment only proscribes *unreasonable* searches and seizures, and the determination of each case necessarily depends on its own particular facts and circumstances. United States v. Rabinowitz, 1950, 339 U.S. 56, 65–66, 70 S.Ct. 430, 94 L.Ed. 653.

2. "Amendment IV—Searches And Seizures
"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."

Was the arrest of appellant without a warrant lawful? Title 26 U.S.C.A. § 7607 permits agents of the Federal Bureau of Narcotics to make arrests without warrant for violation of any laws of the United States relating to narcotic drugs where the violation is committed in the presence of the person making the arrest, or where such person has reasonable ground to believe that the person to be arrested has committed or is committing such violation. A police officer of the State of California, under the provisions of Section 836 of the Penal Code of the State of California, is authorized to arrest a person without a warrant when a person arrested has committed a felony or when a felony has been committed and the arresting officer has reasonable cause for believing the person arrested to have committed it. The arrest was made by an agent of the Federal Bureau of Narcotics and a deputy sheriff of the County of Los Angeles assigned to the narcotics detail. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, makes clear that agents of the Bureau of Narcotics, having probable cause and reasonable grounds to believe that a person is committing a violation of the laws of the United States relating to narcotic drugs, may lawfully arrest such person without a warrant. It clearly appears from the evidence outlined above that sales of narcotic drugs had been made by Skinner on July 16th and July 22nd, 1959, the latter sale having been made only a short time before appellant's arrest and for which Skinner had been arrested. It is clear that the arresting officers knew that the felonies had been committed and had probable cause and reasonable grounds for believing that appellant was a knowing participant in the commission of such felonies. In these circumstances, the arrest of appellant by the officers without a warrant was lawful.

Since the arrest of appellant was lawful, the search of appellant's person and his apartment without a search warrant was lawful, if the search was reasonable. Draper v. United States, supra. The search extended only to the apartment and to the person of appellant. The seizure related only to the currency found on appellant's person, a partially smoked cigarette, a partially smoked marihuana cigarette, and a package of white powder. We find nothing unreasonable about such search or seizure. Evidence obtained in a lawful search, if otherwise admissible, is properly received in evidence. Appellant cites Trupiano v. United States, 1948, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663, and Johnson v. United States, 1948, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436, as holding that even though the arrest of appellant was lawful, the search and seizure without a search warrant was unlawful. In United States v. Rabinowitz, 1950, 339 U.S. 56, at pages 65 and 66, 70 S.Ct. 430, at page 435, the Supreme Court stated:

"It is appropriate to note that the Constitution does not say that the right of the people to be secure in their persons should not be violated without a search warrant if it is practicable for the officers to procure one. The mandate of the Fourth Amendment is that the people shall be secure against *unreasonable* searches. It is not disputed that there may be reasonable searches, incident to an arrest, without a search warrant. Upon acceptance of this established rule that some authority to search follows from lawfully taking the person into custody, it becomes apparent that such searches turn upon the reasonableness under all the circumstances and not upon the practicability of procuring a search warrant, for the warrant is not required. To the extent that Trupiano v. United States, 334 U.S. 699, [68 S.Ct. 1229, 92 L. Ed. 1663] requires a search warrant solely upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest, that case is overruled. The relevant test is not whether it is reasonable to procure a search warrant, but whether the

search was reasonable. That criterion in turn depends upon the facts and circumstances—the total atmosphere of the case. It is a sufficient precaution that law officers must justify their conduct before courts which have always been, and must be, jealous of the individual's right of privacy within the broad sweep of the Fourth Amendment."

In Johnson v. United States, supra, the police officers, acting on a tip from an informer, went to a certain hotel. While walking down a hallway the officers smelled opium fumes emanating from a room. Solely on the basis of the odor, with no information as to the occupant of the room, without a warrant of arrest, without probable cause or reasonable grounds for believing that a felony was being committed by the defendant, and without a search warrant, the police officers gained entrance to the room, arrested the sole occupant and searched the room, which search produced an opium smoking apparatus. In the instant case, the arrest of appellant was lawful and the search and seizure incident to such lawful arrest was reasonable.

We will now consider appellant's contention that, even assuming that appellant's arrest and the subsequent search were lawful, the district court erred in admitting into evidence over his objection the partially smoked marihuana cigarette and the package of white powder which the search of appellant's apartment revealed. Appellant contends that such evidence was evidence of an independent offense, not charged in the indictment, not relevant or material to the offense charged, and that the receipt thereof in evidence was prejudicial error.

Prior to the commencement of the trial appellant filed a motion to suppress the articles above mentioned seized on the search of appellant's apartment, on the ground that such articles were the fruits of an unlawful search and seizure. The district court reserved ruling on the motion. Such articles were first marked for identification only during the pres-entation of the government's case in chief, and then one of the arresting officers was asked to describe the articles which were seized. He replied, "A partially smoked marihuana cigarette, a partially smoked cigarette, and a small package of white powder." At this time counsel for appellant stated, "Your Honor, I will object at this time because this material is not in evidence, I don't feel it's relevant at this time either to the charges facing the defendants in this case—there is nothing in the indictment nor is there anything to indicate that any of the defendants has been charged with marijuana—" Again the court reserved ruling. Later these articles [marked Exhibits D and E] were offered in evidence by government counsel. Again appellant's counsel objected to their receipt in evidence. The court stated, "Members of the jury, these exhibits will be received into evidence. It is for you to determine from all of the evidence in the case whether or not they tend to bind one or more of the defendants in connection with the Government's case."

Government counsel in their brief recognize that the general rule prevailing in this Circuit is that when a defendant is on trial for a specific offense, evidence of a distinct offense unconnected with that charged in the indictment is not admissible, see Wright v. United States, 9 Cir., 1951, 192 F.2d 595, but contends that under a well recognized exception to this rule evidence of other crimes can be admitted for the purpose of showing guilty knowledge.

Appellant's contention that the district court erred in admitting the seized articles into evidence is contrary to the recent decision of this Court in Anthony v. United States, 9 Cir., 1958, 256 F.2d 50. In the Anthony case the trial court carefully instructed the jury as to the limited purpose for which the evidence of the offense not charged in the indictment was received, and the limited purpose for which such evidence should be considered by the jury. In the instant case substantially similar instruc-

tions were given to the jury by the district court. Such instructions were approved by counsel for the appellant at the conference on instructions contemplated by Rule 30 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. After the instructions to the jury had been given by the trial court, appellant made *no objection to any portion of the instructions given*, nor did he make any assignment of error as required by Rule 30. In Anthony the Court stated, at page 53:

"Appellant's whole argument on this point overlooks entirely the limitation ordered by the court and the instructions given by the court, which the jury presumably followed. The court specifically told the jury that the fact a defendant may have done an act on one occasion would not be proof he did it on another. The evidence introduced solely for the limited purpose ordered by the trial court and considered by the jury under the court's careful instruction was proper, even if obtained subsequent to the crime charged, Shreve v. United States, 9 Cir., 1939, 103 F.2d 796, 803, certiorari denied 308 U.S. 570, 60 S.Ct. 84, 84 L.Ed. 479. It was admissible as an exception to the general rule of inadmissibility to prove the crime charged, Helton v. United States, 5 Cir., 1955, 221 F.2d 339, 340; to show an established plan or intent, United States v. Wall, 7 Cir., 1955, 225 F.2d 905, 908; 'absence of mistake,' or 'accident', Hoyer v. United States, 8 Cir., 1955, 223 F.2d 134, 138; intent or absence of mistake, Smith v. United States, 9 Cir., 1949, 173 F.2d 181, 185; or to show 'knowledge,' even when no cautionary instruction is given in a narcotics case, Wright v. United States, 9 Cir., 1951, 192 F.2d 595, 596."

While the prosecution in Anthony was under Title 21 U.S.C.A. § 176a, we see no distinction between that section and Title 21 U.S.C.A. § 174 under which appellant was prosecuted. We hold that under the circumstances outlined above no prejudicial error was committed by the district court in receiving into evidence the fruits seized in the lawful search.

■■ Appellant's final contention is that his conviction is improper because no possession of narcotics by appellant was shown, and that therefore the statutory presumption of illegal importation arising from such possession is without foundation.

In Cellino v. United States, 9 Cir., 1960, 276 F.2d 941, 943, we stated:

"Possession is not an element of the offense charged. Rather, proof of possession in 'the defendant' is deemed sufficient evidence to authorize conviction in the absence of satisfactory explanation. In other words, proof of possession avoids the necessity of proving both illegal importation and the defendant's knowledge thereof. But under the express provision of § 174 'the defendant' must be shown 'to have * * * had possession.' " (Footnotes omitted.)

In Cellino we concluded, after an extended examination of the authorities, that circumstantial evidence of dominion and control is sufficient to justify a finding by the jury of constructive possession of narcotics within the statutory possession created in Title 21 U.S.C.A. § 174. Constructive possession may be proved by direct or circumstantial evidence, Rodella v. United States, 9 Cir., 1960, 286 F.2d 306. In the instant case, the evidence of appellant's connection with the sales of narcotics described in the indictment is abundant and convincing. Law enforcement officers observed meetings between appellant and special agent Diamond, and overheard conversations in which narcotics sales in the language of the trade were negotiated. Delivery of the narcotics by Skinner followed telephone calls from appellant. Deliveries of narcotics were made in the same automobile in which appellant had been observed alone and with Skinner in the vicinity of the place where deliveries were made. Government funds advanced to special agent Diamond were found on

appellant's person. In our view, the circumstantial evidence of dominion and control was sufficient to justify a finding by the jury of constructive possession in appellant within the meaning of Section 174. United States v. Landry, 7 Cir., 1958, 257 F.2d 425, relied upon by appellant, is clearly distinguishable from the facts and circumstances of that case. In Landry the evidence showed only that the defendant was in the vicinity of a place where narcotics were discovered. Constructive possession was not considered in Landry.

The judgment of the district court is affirmed.