**David Allen YOUNG, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 17478.**

United States Court of Appeals
Ninth Circuit.

Jan. 6, 1962.

check and where and how appellant had obtained it, appellant declared he was the owner of one "dormant" company in Chicago, and a "partner" (sic) in another "dormant corporation" in Chicago. Appellant further claimed to have a suit pending against the Illinois Toll Commission for $700,000, that the check came from "a partnership" in Chicago that owed appellant $200,000.[1] Appellant refused to identify the partnership, either at the time of the conversation with F.B.I. agents, or at any time thereafter.

One of the partners with whom appellant was to invest the $85,000 (Chase) testified he was asked on February 22, 1960, by appellant if he (Chase) would go to Chicago with Young to pick up a check. No mention was made as to the amount of the check. Appellant and Chase flew to Chicago on the 23rd of February, 1960, and were met at the airport by a man introduced to Chase by Young as Roy Peterson. After leaving Mr. Peterson, Mr. Chase checked into the Drake Hotel where he and Young stayed for a day before changing hotels. Over a period of three or four days Young stated to Chase that the check for which he came to Chicago was delayed. Young and Chase occupied the same hotel room for several days, yet Mr. Young never made any statement whatsoever to Chase concerning the source of possible funds, or of any business transaction out of which the check for which he had come to Chicago could be obtained.

On the night of February 26, 1960, Young received a telephone call, and related to Chase that the check would be there the next morning. The next morning appellant and Chase went to the lobby of the hotel and waited for a car to pick them up. Nothing was said by Young as to who was to pick them up. Thereafter, Chase and Young entered a private automobile being driven by a man intro-

Alton I. Leib, Beverly Hills, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Asst. Chief, Crim. Div., John R. Schell, Asst., Los Angeles, Cal., for appellee.

Before BARNES, MERRILL and BROWNING, Circuit Judges.

BARNES, Circuit Judge.

The evidence in the district court showed that appellant late in 1959, in Los Angeles, California, entered into an agreement to invest some money in real estate with two other persons, one Leo Chase and Glen Odekirk, who needed capital in their partnership real estate business. In the transaction, Young delivered a $185,000 cashier's check, drawn on a Chicago, Illinois, bank into a local bank escrow, with the admonition it was not to be cashed for sixty days. Meanwhile, on the security of the check, $85,000 was to be advanced to appellant.

Telephonic inquiry by the bank developed that the check was a forgery. The Federal Bureau of Investigation was called in, and on questioning appellant as to the authenticity of the cashier's

[1]. Appellee made an offer of proof upon its case in chief that appellant had made statements to various people that he had moneys coming from Allen Young Construction Company, and from the Illinois Toll Commission, when in fact appellant had no such moneys coming from Allen Young Construction Company.

The trial court ruled any such evidence was rebuttal; and when appellant introduced no evidence on his own behalf, no rebuttal was offered by the government.

duced by Young as "Nick." (At this point during the trial, Chase identified the man Young called "Nick." "Nick," who had previously been sworn, identified himself as Frank R. Roberts of Chicago, Illinois.) The only conversation relating to a check occurred as Young and Chase entered the car. "Nick" handed Young an envelope and Young asked "Nick" if the check was good, to which "Nick" replied "as good as gold." Young then asked if he could "check on this check" and received the reply from "Nick," "Definitely, yes, but do not cash it yet." No conversation took place with respect to any taxpayer's fiscal year (a later explanation) nor was any reason mentioned for not cashing the check at that time. Chase did not see the check pass from "Nick" to Young, nor did he observe the contents of the envelope. When confronted with the forged cashier's check by F.B.I. Agent Meaney on March 2, 1960, Young stated that Exhibit 1, the forged $185,000 cashier's check, was handed to him in an envelope, Exhibit 5, in Chicago, Illinois, on February 27, 1960.

"Nick" drove Chase and Young to the airport where Young and Chase boarded a flight for Los Angeles, California. As they neared Los Angeles, Young displayed Exhibit 1, a cashier's check payable to Allen Young in the amount of $185,000 to Chase.

, Appellant offered no evidence in his own defense. Appellant was originally indicted on one count of transporting, on or about February 27, 1960, a forged cashier's check in the sum of $185,000 from Cook County, Illinois, to Los Angeles, California, in violation of Title 18 U.S.C. § 2314.[2] Under a superseding indictment, appellant was charged (with other defendants) (1) with a conspiracy to transport a forged cashier's check in

the sum of $750,000; (2) with transporting such check from Los Angeles, California, to Chicago, Illinois; and (3) with the same transportation on the same date of the same check mentioned in the original indictment.

Trial by jury resulted in acquittal of defendant Young on Counts I and II, and conviction on Count III.

After a sentence of four years imprisonment, suspended as part of five years probation, except for six months in jail,[3] appellant Young filed a timely appeal.

Jurisdiction of the court below rested on 18 U.S.C. §§ 2, 371 and 2314. This court has jurisdiction under 28 U.S.C. §§ 1291 and 1294(1).

The sole question on appeal is the sufficiency of the evidence to establish that the transportation of the concededly forged and transported cashier's check was *with fraudulent intent* and *with knowledge* that it was falsely made. It is impliedly conceded by the government that such intent and knowledge is an essential element of the crime. Johnson v. United States, 5 Cir., 1953, 207 F.2d 314, cert. denied 347 U.S. 938, 74 S.Ct. 632, 98 L.Ed. 1087.

Appellant argues that a person cannot be convicted merely because he refuses to disclose the source from which he obtained a forged check. He had a good reason, urges appellant: "[H]e [Young] felt that it would impair his chances of collecting his money from the partnership if he identified the partnership." And this, says appellant, was "the only evidence against appellant."

We cannot agree. There *was* other evidence, and it was substantial evidence from which appellant's guilt could be inferred. The most striking is appellant's,

2.  Title 18, U.S.C. § 2314 provides in pertinent part:
    "Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities, knowing the same to have been falsely made, forged, altered or counterfeited; or
    *     *     *     *     *

"Shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

3.  There were other terms of probations prescribed, none here pertinent.

request that the cashier's check be held uncashed for sixty days. Anyone with the slightest knowledge of banking knows that keeping a cashier's check for one day or a hundred does not improve the chances of its being paid. A bank will not issue such a check until it has received, and set aside for payment, the amount of the cashier's check. Apart from such general knowledge with which any business man of parts is familiar, there was here testimony before the jury that a cashier's check is an obligation of the drawee *bank* (not of the person or legal entity obtaining it); is payable upon demand; and must be paid immediately, even if presented on the very date of issue.

Other evidence was likewise before the jury. Much of it raised several strong inferences, at the very least, as to appellant's intent and knowledge. We need not repeat it in detail, but as an example, we mention appellant's reliance upon the fact that the mysterious "Nick" (Frank R. Roberts) who had handed the appellant the check in an automobile in Chicago on the way to the airport, in the presence of Leo Chase, was asked by appellant if the check was good, to which "Nick" replied: "as good as gold." Why anyone should question a cashier's check, issued by a purportedly reputable national bank, is debatable. What value "Nick's" statement might have added to its worth is questionable. The jury might well have inferred from this fact alone (as the government contends) that the conversation between "Nick" and appellant Young was intentionally had for the benefit of Chase, so that Young could further a plan to use a forged cashier's check for $185,000 to obtain an advance of $85,000, prior to and without cashing the cashier's check.

Further, we cannot agree that "the stated motive for nondisclosure was both innocent and reasonable." As a matter of law, it was neither. As a matter of fact, it was for the jury to decide. Having decided that issue adversely to appellant, we must, on this appeal as to the sufficiency of the evidence, view the evidence in the light most favorable to the government. Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; Robinson v. United States, 9 Cir. 1959, 262 F.2d 645.

We conclude that the trial judge committed no error in denying the motion for judgment of acquittal. The evidence as to all necessary elements of the crime charged was adequate and convincing.

The judgment of conviction is affirmed.