**Wardell BOWIE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 19271.**

United States Court of Appeals
Ninth Circuit.

May 12, 1965.

Edward C. Pinkus, Gang, Tyre, Rudin & Brown, Hollywood, Cal., for appellant.

Manuel L. Real, U. S. Atty., John K. Van de Kamp, Asst. U. S. Atty., Chief, Crim. Sec., J. Brin Schulman, Asst. U. S. Atty., Asst. Chief Crim. Sec., Warren P. Reese, Los Angeles, Cal., for appellee.

Before BARNES, JERTBERG and ELY, Circuit Judges.

JERTBERG, Circuit Judge:

On June 29, 1960, appellant Wardell Bowie, was indicted along with three other defendants, George Quong Lee, R. L. Fowler, and John Chatman. He was charged in three counts of an eighteen

count indictment with violation of § 174, Title 21, U.S.C.A., (1956). Count one charges appellant, Lee, Fowler, Chatman, others to the grand jury unknown, and one Hendrix, an unindicted co-conspirator, with conspiring during the period August 1, 1958 to April 18, 1960 to sell, conceal and facilitate the sale, concealment and transportation of heroin, which, as the defendants well knew, would be imported into the United States contrary to law. Count five charged that on or about December 20, 1958, appellant knowingly and unlawfully purchased approximately eight ounces of unlawfully imported heroin from Lee and Hendrix. Count six charges that on or about December 20, 1958, appellant and Lee knowingly and unlawfully concealed and facilitated the concealment and transportation of approximately eight ounces of unlawfully imported heroin.

All defendants were tried to a jury in a single trial. On motion for judgments of acquittal at the close of the Government's case, the court reserved its ruling until the close of all the evidence, at which time the court granted the motion as to the conspiracy count (Count One) for failure of proof as to the appellant and two of the other defendants—Chatman and Fowler, and denied the motions for judgment of acquittal on the substantive counts.

The jury returned verdicts of guilty as to all defendants and as to all remaining counts. Appellant was sentenced to eight years imprisonment on each of counts five and six to begin and run concurrently with each other and also to run concurrently with the sentence appellant was then serving pursuant to a prior and unrelated conviction.

In both of appellant's two specifications of error, it is his contention that the trial court erred in not *sua sponte* declaring a mistrial.

The evidence introduced on behalf of the Government showed that Lee was the supplier of the narcotics which he obtained from the Far East; that he and Hendrix had agreed to "handle" narcotics; that Hendrix would contact pro-spective purchasers and then arrange a sale from Lee keeping a portion of the purchase price as his commission.

The evidence relating to appellant was, briefly, as follows: Hendrix testified that he was introduced to appellant during the latter part of December 1958 in an apartment located near 101st Street and Grape in the City of Los Angeles. Appellant asked Hendrix if he could obtain for him a whole brick of heroin. After trying a sample, appellant agreed to purchase a "brick" for $2,600. Arrangements were made between appellant and Hendrix to meet at 43rd Street and Normandie. At the meeting, appellant would not give up more than half the purchase price until he was convinced Hendrix could produce the heroin. Hendrix then left the scene and met with Lee who was waiting a few blocks away. Hendrix then returned to appellant, picked up the other half of the money, again met with Lee and returned delivering the narcotics to appellant.

Hendrix also testified that he again met with appellant in June of 1959 at Los Angeles, and discussed traffic in narcotics but that no transaction occurred at that time. Later in the trial, as a rebuttal·witness, Hendrix testified that he was mistaken as to the date of the last mentioned meeting with appellant, and that such meeting occurred not in June of 1959, but during the month of February, 1959. This rebuttal testimony occurred after a witness, called on behalf of appellant, had testified that appellant was incarcerated in the County Jail at Los Angeles from early April to early November of 1959, which fact was conceded by Government counsel.

The only other witness called by the Government, who testified against appellant, was John Campbell, a Federal Narcotics Agent, whose testimony will be discussed later in this opinion.

Appellant's aunt, who had raised him from birth to age twelve, testified that appellant had lived with her and her husband in their Oakland home (Oakland, California is approximately 400 miles from Los Angeles, California) through-

out the month of December 1958, the month in which the substantive offenses charged against appellant allegedly took place. She testified that she had seen him every day during that month but she had not seen him from 1951 to the date of the trial with the exception of December 1958.

Appellant did not testify.

Appellant specifies that the trial court erred in failing *sua sponte* to declare a mistrial:

1. Because an incriminating statement made by appellant and testified to by a government witness had been illegally obtained; and

2. Upon the granting by the District Court of a judgment of acquittal of appellant upon the conspiracy count—Count I of the indictment.

The claimed error under 1. above arises from the testimony of John Campbell, a Federal Narcotics Agent. His testimony and the subsequent events in that regard, relative to this appeal may be summarized as follows:

On direct examination, as a witness for the Government, Campbell testified that in February of 1960 he was employed as a Narcotics Agent by the United States Bureau of Narcotics, and stationed at San Francisco; and that he had a conversation in that month with appellant. At this point appellant's counsel objected to the introduction of any testimony of the conversation occurring in February of 1960 upon the ground that it was too remote to prove any issues in the case. The objection was overruled, and Campbell was asked: "[T]o the best of your recollection, what did you say to Bowie, and what did Bowie say to you?" Campbell replied:

"I questioned Mr. Bowie concerning his source of supply of heroin.

"He stated he had been buying heroin in bricks from a Luevoirn Hendrix in Los Angeles.

"He also—I asked him if he had any idea of where Hendrix was obtaining this heroin and he said yes,

he was getting it from a Chinese by the name of either Lee or George."

Thereupon the District Court admitted the testimony only as against the appellant.

On cross-examination by appellant's counsel, Campbell stated that the conversation took place on the 12th; that it was not reduced to writing; and that no recording was made of the conversation. Later Campbell was recalled to the stand by the Government for further direct examination and gave the following testimony:

"Q [By Mr. Medvene, Government counsel] Agent Campbell, I spoke with you yesterday about a conversation you had on February 12th, 1960 with the defendant, Wardell Bowie. There were a couple of questions that I didn't ask you.

"I think you stated yesterday that he received the heroin in block form from Luevoirn Hendrix in Los Angeles. I didn't ask you what price per ounce of the heroin was in December of 1958 when he purchased it.

"A The—I asked the question how much the heroin cost. And he stated that, Bowie stated that he paid $400.00 an ounce for the heroin, that it was in the block form and the price of the block would range from, depending upon the size of the block, either six, seven or eight ounces."

He was not further cross-examined by appellant's counsel.

During the Government's closing argument to the jury, appellant's counsel objected to a statement in the argument which in substance charged that appellant admitted to Agent Campbell that he had purchased heroin from Hendrix in December, 1958. Thereupon the jury was excused and the record of Agent Campbell's testimony was read back in the presence of court and counsel. Following the reading back of such testimony the District Court concluded that there was nothing in Agent Campbell's

testimony which referred to a narcotics transaction between Bowie and Hendrix occurring in December of 1958.

Following the reading back of such testimony, the following colloquy occurred between court and counsel:

APPELLANT'S COUNSEL: "Your Honor, if I may make this observation—the jury isn't here—this defendant [Bowie] had a case up in San Francisco, and the conversation between Campbell and the defendant was in reference to a matter which was pending against the defendant Bowie in San Francisco.

"THE COURT: And he was under arrest at that time?

"[APPELLANT'S COUNSEL]: That's right.

"[GOVERNMENT COUNSEL]: We never brought that in, your Honor.

"THE COURT: I know, but you didn't lay a foundation for the admission of this testimony in any event. He wasn't warned of his rights, apparently, and——

"[GOVERNMENT COUNSEL]: Sir, we didn't want to go——

"THE COURT: It doesn't make any difference whether you want to go into or not, you can't take a man and put him under arrest and start questioning him. You have got to tell him what his rights are, that he is entitled to the assistance of counsel, that he is entitled to not say anything.

"Now, in the first place, you are mistaken, counsel, that the conversation referred to a transaction in December.

"And in the second place the testimony should be stricken entirely.

"[APPELLANT'S COUNSEL]: Your Honor, in behalf of Defendant Bowie I move to strike the testimony.

"THE COURT: It will be stricken. Call the jury in.

"[GOVERNMENT COUNSEL]: If the court please, can the Government be heard?

"THE COURT: No. Let's get on with this.

"[GOVERNMENT COUNSEL]: If the court please——

"THE COURT: I am telling you, counsel, I have ruled.

"[GOVERNMENT COUNSEL]: But if the court please——

"THE COURT: Counsel—call the jury. Counsel, I have heard enough now.

"[GOVERNMENT COUNSEL]: Your Honor, you have heard one side. We would like to tell you what our side of it is.

"THE COURT: Counsel, you will be in contempt of court."

Following the above colloquy the trial resumed in the presence of the jury, and the following proceedings occurred:

"THE COURT: Ladies and gentlemen of the jury, in the course of argument on behalf of the Government by counsel for the Government, reference was made to a conversation had between Agent Campbell and the defendant Bowie.

"Counsel was mistaken in his view of what was said by the defendant Bowie to the agent. He was mistaken in that regard.

"But in any event—and further beyond that—it has come to the court's attention that the statement was made by the defendant Bowie— if it was made at all—to the agent at a time when the defendant Bowie was under arrest and being questioned. And it does not appear from the record that the defendant was warned and advised of his constitutional rights, that he was entitled to the assistance of counsel, that he was entitled not to talk at all.

"And therefore the court must order stricken all the testimony of the agent with reference to that conversation.

"And you ladies and gentlemen of the jury are admonished to disregard that entirely, put it entirely out of your minds. You are not entitled to consider that evidence or testimony in the case at all.

"You may continue with your argument."

Appellant concedes that no motion for a mistrial was made. He argues, however, that even if the motion to strike the testimony of Agent Campbell cannot be construed as a motion for mistrial, the failure of the District Court to declare a mistrial was plain error[1] affecting substantial rights of appellant.

■ While we are aware that the District Court carefully admonished the members of the jury to put such stricken testimony completely out of their minds and not to consider such testimony at all, and in its general instructions to the jury admonished the jury to entirely disregard any evidence ordered stricken by the court, nevertheless we are constrained to state that in our view the prejudice to the appellant resulting from the circumstances surrounding the striking of Agent Campbell's testimony persisted and adversely affected appellant's substantial rights and compel us to recognize the same as plain error. Throughout the entire trial, up to the time that the District Court struck Agent Campbell's testimony from the record, no testimony was presented to the jury that appellant was under arrest at the time of the conversation related by Agent Campbell. Such fact appeared for the first time when the District Court stated to the jury: "the statement was made by the defendant Bowie—if it was made at all—to the agent at a time when the defendant Bowie was under arrest and being questioned." While the jury was admonished to disregard Agent Campbell's testimony, which did not include any statement that Bowie was under arrest at the time of being questioned, no admonition was given by the court to disregard the court's statement that appellant was under arrest at such time.

■ While the record does not disclose for what offense appellant was arrested, it was clearly an offense unrelated to the offenses charged against Bowie in the indictment upon which he was on trial. Subject to certain well-defined exceptions, none of which is applicable in this case, the law is well-settled in this Circuit, as elsewhere, that when a defendant is on trial for a specific offense, evidence of a distinct offense unconnected with that charged in the indictment is not admissible. Wright v. United States, 192 F.2d 595, 13 Alaska 513, (9th Cir. 1951); Teasley v. United States, 292 F.2d 460 (9th Cir. 1961). In Helton v. United States, 221 F.2d 338 at page 340 (5th Cir. 1955) it is stated:

"It is hornbook that, absent a requirement of showing system or intent, evidence of offenses not charged in the indictment is not only inadmissible, but prejudicial if admitted. Boyd v. United States, 142 U.S. 450, 12 S.Ct. 292, 35 L.Ed. 1077; Guilbeau v. United States, 5 Cir., 288 F. 731."

Counsel for appellant had no opportunity to object to the statement made by the District Judge since he was not informed by the District Judge as to what the District Court intended to say to the jury except the court's statement that the testimony of Agent Campbell would be stricken. The failure of counsel for appellant to call to the attention of the District Judge the prejudicial nature of the statement after it was made to the jury, and to request the District Judge to admonish the jury to disregard such state-

---

1. "Rule 52. Harmless Error and Plain Error

\* \* \* \* \*

"(b) Plain Error. Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Fed.Rules Crim.Proc., 18 U.S.C.A., Rule 52.

ment, furnishes us a lame excuse not to invoke the plain error rule. In fact, in the circumstances of this case, it is doubtful that any admonition, however strong, would have destroyed the impression which these remarks created in the jury's mind. Since Bowie was being questioned by a narcotics agent while under arrest, the jury could and probably did reasonably infer that he was under arrest for a narcotics offense, the same type of offense for which appellant was being tried. Absent the stricken testimony of Agent Campbell, there was before the jury on behalf of the Government only the testimony of the unindicted co-conspirator, Hendrix, and the alibi testimony given on behalf of appellant by his aunt. In such posture the added fact that appellant was under arrest while being questioned by a narcotics agent could only adversely affect appellant's case. The crucial period in this case was December 1958, the month in which Hendrix testified appellant purchased narcotics from him at Los Angeles. Appellant's aunt testified that appellant was with her in Oakland every day that month.

Government counsel's mistaken argument to the jury that appellant admitted to Agent Campbell that he had purchased narcotics from Hendrix in December, 1958 at Los Angeles, blighted the cogency of the alibi defense. In the circumstances presented here it is doubtful that the court's admonition to disregard agent Campbell's testimony would have succeeded in effacing from the minds of the jury the crucial period of December, 1958.

In our view appellant was deprived of a fair trial which compels us to reverse the judgment of conviction and remand the cause to the District Court for a new trial.

Such disposition makes it unnecessary for us to discuss appellant's other assignment of error.

Reversed and remanded for new trial.