UNITED STATES of America, Plaintiff-Appellee,

v.

Alphonso NICHOLS, Defendant-Appellant.

No. 13971.

United States Court of Appeals Seventh Circuit.

Sept. 18, 1963.

Melvin B. Lewis, Chicago, Ill., for appellant.

James P. O'Brien, U. S. Atty., John Powers Crowley, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Asst. U. S. Atty., of counsel, for appellee.

Before HASTINGS, Chief Judge, and DUFFY and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Alphonso Nichols, defendant, has appealed from a judgment of conviction entered by the district court on an indictment charging violations of the United States narcotics laws, upon which he was sentenced to the custody of the attorney-general for a period of seven years on each of nine counts, to run concurrently.

Counts VIII and IX were dismissed on motion of the government. The various remaining counts respectively charged defendant with unlawful receipt, concealment, and sales of heroin in violation of 26 U.S.C.A. § 4705(a) and 21 U.S.C.A. § 174 both as amended by the Narcotic Control Act of 1956.

Defendant pleaded not guilty and was tried before a jury. His motion for a new trial was denied.

■ 1. In this court defendant first contends that the district court did not tell the jury the details of what the indictment charged, but merely gave the indictment to the jury and told them that they were free to examine it " * * * if you like."

No objection based upon this alleged error was made at the trial, but we feel justified, in view of the nature of defendant's contention, to consider it in this court.

We have read the record and find that the jury was instructed, *inter alia*:

"Now, let's deal specifically with the charges that are contained in the counts of the indictment which you are going to consider.

"The defendant is charged in Counts I, III, V and X, that is, four counts, with violation of Section 4705(a) of the Internal Revenue Code of 1956, which reads as follows:

" 'It shall be unlawful for any person to sell, barter, exchange or give away narcotic drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged or given on a form to be issued in blank for that purpose by the Secretary of the Treasury or his delegate.'

"In Counts II, IV, VI and VII of the indictment, the defendant is charged that on April 5, 1961, April 10, 1961, April 19, 1961, May 12, 1961 and June 27, 1961, that he then and there, fraudulently and knowingly received, concealed and facilitated the transportation and concealment, after unlawful importation into the United States of a quantity of a certain drug, to-wit, under Count II, 15.9 grams, Count IV, approximately 16.6, Count VI, approximately 15.950 grams, Count VII, approximately 42.320 grams, Count XI, approximately 11.305 grams, knowing the same to have been imported into the United States contrary to law, in violation of Section 174, Title 21, of the United States Code, as amended by the Narcotic Control Act of 1956.

"The statute of the United States under which this violation is charged reads, in pertinent part, as follows:

" 'Whoever fraudulently or knowingly receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug, after being imported or brought in, knowing the same to have been imported contrary to law, shall be,' et cetera.

"This is also part of the statute:

" 'Whenever on trial for a violation of this section, the defendant is shown to have or have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury.'

"In this instance, of course, the defendant has denied having posses-

sion of any narcotic drugs at any time."

In United States v. Jonikas, 7 Cir., 197 F.2d 675, we approved a conviction of defendant for possessing and passing counterfeit bills. At page 679 of 197 F.2d we discussed defendant's contention that the district court failed to instruct the jury in relation to certain charges in the indictment. We said:

" * * * Failure to describe more specifically the separate counts of the indictment did not deprive the defendant of any constitutional right nor deprive the court of jurisdiction to render the judgment."

We feel that the submission of the indictment to be examined by the jury, at its option, was of dubious value, although harmless.

We hold that the court's instructions as to the charges in the indictment were sufficient.

■ 2. Defendant argues that the district court refused to properly consider the element of knowledge and the element of intent, in its instruction on the meaning of possession. We disagree.

For instance, the court properly charged:

"Now, what does possession of a thing mean? It means having it in one's control or under one's dominion. It is not necessary that possession be direct or immediate or exclusive.

"If you find from the evidence that the defendant, although he may have had the right to obtain physical control of a substance, did not know that such substance was narcotic drugs, then such possession of the narcotic is not that possession contemplated by the law. In other words, you have to have knowing possession of illegal or contraband products, such as narcotics, to constitute a violation of the law."

■ Moreover, we are satisfied that the jury was fully and correctly instructed on the law pertaining to reasonable doubt and presumption of innocence.

If anything, the court went out of its way to add the following instruction:

"For example, the presumption of innocence with which a defendant starts a trial is a presumption which the law requires you to make unless you find convincing evidence to the contrary. A presumption continues in effect until overcome or outweighed by evidence to the contrary. But if it is so outweighed, then you are to find whatever conclusion you draw from whatever evidence you have heard. If it is not so outweighed, you are bound to find in accordance with the presumption."

The court's solicitude for the rights of the defendant was emphasized by its concluding remarks to the jury:

"Let me reiterate, the defendant is presumed to be innocent unless you find beyond a reasonable doubt that the Government has established his guilt as to one or more counts of the indictment."

■ 3. Asserting that the "most significant issue presented to the jury lay in the relationship between the defendant and the deceased known as Dorothy Nichols," defendant now concedes that drug addicts conducted transactions at defendant's home, but that he had no knowledge thereof. He points out that count VII relates to narcotics kept in a safe-deposit box which only Dorothy entered. However, it was stipulated at the trial that this box at a Chicago bank was leased to three persons, who were defendant, Dorothy and one Charles A. Ross.

In support of the testimony of certain witnesses, the government relied, *inter alia*, on evidence that a gun, government's exhibit F, was found in said box and the testimony of government witness Mack, who stated that, in April of 1961, he possessed an Italian 25 caliber silver pistol with scroll work on the side and a pearl handle; that about the middle of April, the exact date being unknown, he gave the weapon to defendant at his

home. Mack, when asked to identify exhibit F, answered:

"To the best of my knowledge, I believe this is the same weapon."

He added that, on the previous day, he had seen the weapon in the prosecutor's office, and had described it to agent Taylor at the time of his arrest.

On cross-examination, his attention was called to an inscription "made in Spain" on the gun and he stated that he had never read that inscription before.

The gun having been received in evidence over objection, defendant's motion for a mistrial was denied.

Witness Mack was thoroughly cross-examined about the gun by defense counsel.

In this court defendant asserts:

"It is *incredible* that anybody could profess to reasonable assurance that the gun which Mack claims to have given the defendant was the same gun introduced in evidence." (Italics ours.)

Inasmuch as counsel for defendant expressly grounds his argument upon the basis of incredibility, he tacitly admits that the question of the identity of the gun found in the box as being the same as the weapon which he gave to defendant, was a question of fact for the jury. We hold that there was sufficient evidence to support the finding of fact by the jury, implicit in its verdict, that the gun found in the box was the gun that Mack had given to defendant.

■ 4. Defendant argues that there was no showing that the substance allegedly received by Mack from defendant was heroin. We disagree.

On May 11, 1961, Mack telephoned the defendant and asked whether he could buy "two spoons of stuff", the word "stuff" meaning heroin to the witness. After telephoning, and, pursuant to arrangements made with defendant, he went to the latter's home and gave him $270 and then, not hearing from defendant for four hours, he again went to his home and was told by defendant that he was not ready. Thereupon, on the next morning, May 12, 1961, defendant called Mack and directed him to meet Dorothy Nichols at 63rd and Halsted streets. Going there he waited until she arrived and gave him a tin foil package containing a powder, which he took home and some of which he injected into his arm with a hypodermic needle. His reaction thereto he described to the court and jury. He received the same reaction from the injection of this powder that he always did.

Bank records showed that an entrance ticket to the box was issued on May 12, 1961 at 9:58 A.M. and it was signed by Dorothy.

A chemist in the government's internal revenue laboratory who examined a white powder found in the box, following the death of Dorothy, ascertained that the powder was heroin. She died June 13, 1961.

We are convinced that, from the evidence in the record, the jury was justified in finding beyond all reasonable doubt that the substance involved in the transactions covered by the indictment was heroin. Generally in support of our conclusion are Toliver v. United States, 9 Cir., 224 F.2d 742, 745 (1955), and United States v. Agueci, 2 Cir., 310 F.2d 817, 828 (1962).

5. In proof of several counts, the government relied at the trial on testimony of Steve Spaulding that, after receiving a substance from defendant on April 5, 1961 and April 19, 1961, and from his wife on April 10, 1961, he returned to his home and diluted the packages with milk sugar and what is termed "mannitte". Defendant contends there resulted a lack of proof that the substance obtained from him and his wife was heroin.

Defendant admits that the chemist confirmed that the resulting mixture was a narcotic, but insists that it does not follow that defendant gave a narcotic substance to Spaulding.

There is evidence showing that on April 5, 1961, Spaulding called defendant

and told him he wanted to "make up", which to him meant "buy some drugs". Arriving at defendant's home, he said that he wanted "two spoons of stuff", which to him meant heroin. He gave defendant $220 and received from him two glassine packages, which he wrapped up in tin foil and handed to Spaulding. On April 10, 1961 he received two glassine packages from defendant's wife. On April 19, 1961, he called defendant, told him he wanted to "make up" and upon arriving at defendant's home he was admitted by Dorothy Nichols and paid her $220. She went upstairs and returned with two packages which she began to wrap, when defendant entered and inquired whether anyone had followed Spaulding. Defendant looked out the window and saw a white man standing outside, whereupon he told his wife to return the money to Spaulding who left and went to a movie. After the movie he called defendant to "make up", returned to defendant's basement and gave him the $220. Defendant then gave him two glassine envelopes and told him to be careful. The jury might well have drawn an inference that Spaulding, the defendant and his wife, did not go through these involved and guarded maneuvers in order to deliver some innocuous powder to Spaulding, who would then return to his own basement and add the heroin, which was subsequently found in the chemical analysis. In fact a failure by the jury to draw such an inference would be surprising. None of these facts in evidence is inconsistent with a finding that the substance received by Spaulding from the defendant contained heroin.

■ 6. Contrary to defendant's argument that the evidence did not suffice to prove guilt beyond a reasonable doubt, we are required to apply to the evidence in the record the rule that the verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the government, to support it. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; United States v. Frierson, 7 Cir., 299 F.2d 763, 767 (1962). We hold that the evidence

in the record meets this test beyond a reasonable doubt as to the guilt of defendant.

For these reasons we affirm the judgment from which this appeal was taken.

Judgment affirmed.