**UNITED STATES of America,**
**Appellee,**

v.

**Patricia ATKINS, Appellant.**
**No. 72–1181.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 16, 1972.

Decided Jan. 17, 1973.

Rehearing and Rehearing En Banc
Denied Feb. 21, 1973.

Irl B. Baris, St. Louis, Mo., for appellant.

Arthur W. Vance, Atty., Bureau of Narcotics and Dangerous Drugs, Criminal Div., Department of Justice, Washington, D. C., for appellee.

Before LARAMORE, United States Court of Claims Senior Judge, and BRIGHT and ROSS, Circuit Judges.

ROSS, Circuit Judge.

The appellant appeals from a conviction, based upon a jury verdict, of aiding and abetting the purchase of heroin in violation of 26 U.S.C. § 4704(a).[1] Two issues are presented for determina-

---

1. 26 U.S.C. § 4704(a) was repealed by the Comprehensive Drug Abuse Prevention and Control Act, Pub.L.No. 91–513, § 1101(b)(3), 84 Stat. 1292 (October 27, 1970). The appellant does not contend, however, that this prosecution is barred by the repeal, since the effective date of the repeal was subsequent to the date of the offense alleged in the indictment. *Id.* at § 1105(a), 84 Stat. 1295.

tion by this Court: Whether the Government presented sufficient evidence to submit the case to the jury; and, whether the trial court erred when it permitted witnesses to express opinions that the substance involved was in fact heroin. We affirm.

## I. Submissible case.

The appellant presented no evidence and the Government's evidence disclosed the following: In October 1970, Frank August and Clyde Penrose illegally brought two pounds of heroin into the United States from Thailand. August contacted Shirley McWorthy concerning the sale of his pound of heroin. McWorthy replied that she did not know of any buyers, but that "she would see." McWorthy then contacted the appellant who also replied she did not know of any buyers, but that "she would see." A day or so later the appellant, apparently by prearrangement, met McWorthy at a bar where McWorthy worked. The appellant introduced Agnes Brittain, who had not come in with the appellant, as someone who "might be able to help [McWorthy]." With the appellant still at the table, the subject turned to heroin and Brittain asked McWorthy for a sample. About a day later August brought McWorthy a sample of the heroin, McWorthy delivered the sample to Brittain, but the woman Brittain had brought along to test the heroin, Betty Carol Aleshire, stated the sample was not large enough. The appellant was not present at this meeting. A few days later another sample was given to Brittain by McWorthy which was of a sufficient quantity to test. Aleshire tested the sample and determined that "it was very good." The appellant `was not present at this transaction. Subsequently August, his father, Murray Kimbrell, Brittain and Aleshire met at the bar where McWorthy had been introduced to Brittain by the appellant. The four then went to the Brittain residence where a larger quantity was again tested by Aleshire. Having again found the substance to be of good quality, the

transaction was consummated when August transferred one-half pound of heroin to Brittain for $3,000.00. Subsequently McWorthy and the appellant continued to meet. In describing their conversation McWorthy testified that: "[W]e just decided that we had been burned . . . [T]he deal that we made hadn't been carried through." McWorthy also testified that the appellant did not say anything to her about expecting money.

■ The legal issue which confronts this Court is whether the Government produced substantial evidence from which a jury might properly find the appellant guilty of aiding and abetting Agnes Brittain in the purchase of narcotics beyond a reasonable doubt, viewing the evidence in the light most favorable to the Government together with the inferences which may be fairly drawn. *See* United States v. May, 419 F.2d 553, 555 (8th Cir. 1969); Tanner v. United States, 401 F.2d 281, 285 (8th Cir. 1968), cert. denied, 393 U.S. 1109, 89 S.Ct. 922, 21 L.Ed.2d 806 (1969). To answer this question it is remembered that in order to be guilty of aiding and abetting a crime

> "[t]here must be 'purposive attitude' which facilitates the unlawful deed. United States v. Peoni, 100 F.2d 401, 402 (2d Cir. 1938). This means there must exist some affirmative participation which at least encourages the perpetrator." United States v. Thomas, 469 F.2d 145, 157 (8th Cir. 1972).

With the foregoing in mind, it is helpful to reiterate the evidence and the inferences that may be fairly drawn therefrom. First, McWorthy spoke to the appellant and asked her if she knew anyone who wanted to buy heroin. The appellant replied that she did not know anyone, but that "she would see." This evidence unequivocally demonstrates that the appellant was interested in more than casually naming names; she was willing to actively seek out buyers. The appellant could have rested on the fact that she was not aware of anyone

wanting to buy heroin, but on the contrary the appellant elected, on her own, to expend her efforts to find a buyer.

Second, a day or so after the appellant spoke to McWorthy the appellant introduced McWorthy to Brittain at a bar as someone who "might be able to help [McWorthy]." With the appellant still at the table, the subject turned to heroin and Brittain asked McWorthy for a sample. Obviously there are a number of damaging inferences that may fairly be drawn from this evidence. The first inference is that the appellant's participation in these activities was not the product of unthinking action as she had a day or so to contemplate her plans. In addition, it is fair to infer that the appellant personally sought out Brittain, since the appellant previously was not aware of any buyers. Furthermore, a logical inference may be drawn that the appellant was concerned enough about consummating or helping to consummate the purchase of heroin that she went to the bar and introduced McWorthy and Brittain, instead of the easier, not to mention safer, course of simply giving Brittain McWorthy's name and allowing Brittain to contact McWorthy without the help of the appellant. Moreover, it is fair to infer that the appellant was not only concerned that Brittain meet McWorthy while the appellant was present [McWorthy and Brittain were not acquainted prior to the meeting in the bar], but that the appellant was interested enough in the specifics of the purchase that she remained at the table during Brittain's conversation with McWorthy. Once again it would have been much safer to simply introduce the parties and leave; her continued presence can only be taken as an encouragement to Brittain to consummate the sale.

Third, after the eventual purchase of the heroin McWorthy and the appellant continued to meet. During the course of their conversation they discussed the fact that "we had been burned . . . ." An inference may be fairly drawn that the appellant's interest in the transaction was not fleeting, but rather was intense enough to continue even after the purchase had been consummated. Accordingly this evidence is highly probative of the appellant's state of mind when she engaged in the foregoing activity and is inconsistent with the assertion that the appellant did not care whether Brittain did or did not make the purchase.

The appellant places principal reliance upon Morei v. United States, 127 F.2d 827, 831–832 (6th Cir. 1942). The relevant facts of the Morei case are that Beach, an informer, approached Dr. Platt, the defendant, and told him that he wanted heroin to "soup" race horses. The informer testified that he gave the doctor names of certain horses who were to run in races in order that the doctor could bet on them, and he told the doctor that the heroin was to be used to stimulate the horses. Dr. Platt claimed that he did not have any heroin, but he allegedly did give the informer the name of Morei, Morei's address, told the informer to tell Morei that the doctor had sent him, and concluded that Morei "will take care of you." The court found that this evidence was insufficient to support the charge of aiding and abetting the purchase and sale of narcotics.

██ Without expressing an opinion as to whether or not *Morei* was correctly decided, that case is distinguishable from this case because of the appellant's personal participation in seeking out Brittain, her personal introduction of Brittain in a public place, and her continued presence at the table during Brittain's conversation with McWorthy. In *Morei* there was no evidence that Dr. Platt ever met or made contact with the seller, while here the appellant brought the buyer and seller's agent together. Further, in *Morei* there was no evidence that Dr. Platt knew anything about the specifics of purchase and sale, while here the appellant was well aware of the impending exchange of a heroin sample. Moreover, in this case, as opposed to the *Morei* case, there is evidence indicating that the appellant demonstrated an in-

terest in the purchase on at least three occasions.

The case of Robinson v. United States, 262 F.2d 645, 648–649 (9th Cir. 1959) is also distinguishable. In *Robinson* the defendant gave one Cammack the name of a man from whom he might purchase heroin and twice supplied Cammack with the man's telephone number. The court held that the evidence was insufficient to support the charge of facilitating the sale of a narcotic drug. In *Robinson* there was no evidence from which an inference might be drawn that the defendant personally spent time locating the seller. In *Robinson* there was no evidence that the defendant personally met with the buyer and seller and remained during their conversation. And in *Robinson* there was no evidence that the defendant expressed an interest in the transaction after the consummation of the sale.

Likewise the case of United States v. Moses, 220 F.2d 166–169 (3d Cir. 1955), is distinguishable. In *Moses* two undercover agents approached the appellant at her apartment and inquired about the possibility of purchasing drugs. She indicated that she did not have any, but that her supplier would soon be there and she would arrange for the agents to get the drugs from him. When the supplier arrived the appellant introduced the agents and said that they were "all right." Sometime thereafter, with the appellant not present, the sale of the drugs was consummated. The court held that there was no evidence to show any association with the seller and reversed the conviction for aiding and abetting the sale.

The critical difference between the *Moses* case and the case at bar is that the appellant in this case actively sought out the buyer. The *Moses* court implicitly recognized this distinction when it said, "There is no evidence that the appellant's relationship to Cooper's illicit business was other than that of a customer." *Id.* at 168. In the *Moses* case the seller was coming to the appellant's apartment in any eventuality; all the appellant did was introduce the agents, who were already present, and vouch for their "bona fides." In this case the appellant spent time trying to find the buyer, she had to act in an affirmative manner to bring the buyer together with the seller's agent for a meeting, in a public place. Moreover, unlike the *Moses* case, the appellant could have left the bar after the introduction had she not been interested in seeing the purchase consummated, while the defendant in the *Moses* case would not be expected to leave her own home. Further in this case, as opposed to the *Moses* case, there is evidence of a continuity of interest in the purchase even after the consummation of the purchase.[2]

2. The appellant contends that the Government's failure to prove actual or constructive possession of the heroin also rendered the case insufficient to submit to the jury. 26 U.S.C. § 4704(a) provides:

"It shall be unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package; and the absence of appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found."

If the Government did not show possession of narcotics which did not have the appropriate taxpaid stamps, then it must prove that the appellant aided and abetted the purchase and that the purchase was not in or from the original stamped package. *See* United States v. Dillard, 376 F.2d 365 (7th Cir. 1967). The failure to prove possession prohibits the Government from taking advantage of the statutory presumption that possession of narcotics without appropriate taxpaid stamps establishes a purchase, for example, not in or from the original stamped package. As previously discussed, the evidence is sufficient to show aiding and abetting. Moreover, it is clear that the heroin was not *in* the stamped package when it was purchased as Aleshire so testified. It is also clear that the heroin was not *from* a stamped package when purchased as August testified that he smuggled the heroin into the United States from Thailand. Fur-

We conclude, therefore, that appellant was proved to have a purposeful attitude which helped facilitate the unlawful purchase of heroin, and that she affirmatively participated in the purchase, at least to the extent of encouraging and assisting the buyer and the seller. United States v. Thomas, *supra.*

## II. Expert Testimony

The appellant next argues that it was error to allow Frank August and Betty Carol Aleshire to testify that the substance purchased by Brittain was in fact heroin. In essence the appellant indicates that without this testimony the Government failed to prove the substance was in fact heroin, since no heroin was introduced into evidence and no chemist testified with regard to the chemical make-up of the substance.

Frank August was an addict at the times relevant here, who had used various drugs. He testified that the various drugs affected him differently. August had dealt with drugs for six years. He testified that he sampled the substance in question and the reaction he received was similar to the reaction he received when he took heroin. Aleshire also had experience in the "drug culture", although at the time she "tested" the substance in question she was not an addict. Previous to her "test" she had been given heroin by her boyfriend, who was a pusher, so that she would be able to tell the difference between heroin and cocaine. Subsequent to the transaction in question, Aleshire became addicted to heroin which was procured solely from August. She was treated by means of methadone therapy under the auspices of the State of Illinois and under the direction of a private physician.

■■ Whether a person may be allowed to express an opinion as an expert is normally within the discretion of the trial court. *See e. g.,* White v. United States, 399 F.2d 813, 819 (8th Cir. 1968). Accordingly, a witness may be "qualified as an expert by knowledge, skill, *experience,* training, or education . . . ." Rules of Evidence for United States Courts and Magistrates, Rule 702, 56 F.R.D. 183, 282 (on November 20, 1972, the Chief Justice was authorized by the Supreme Court to transmit the *Rules of Evidence* to the Congress) (emphasis supplied). It is not inherently implausible that persons addicted to heroin, one with six years experience and the other given heroin specifically so as to be able to differentiate heroin from a similar appearing drug, might possess the necessary "experiential capacity" to testify that the substance in question, and which both had occasion to use, was in fact heroin. *See e. g.* Weaver v. United States, 111 F.2d 603, 606 (8th Cir. 1940) (competent for a witness to testify that substance purchased by him was morphine); Ewing v. United States, 386 F.2d 10, 15 (9th Cir. 1967), cert. denied, 390 U.S. 991, 88 S.Ct. 1192, 19 L.Ed.2d 1299 (1968) (witness's conclusion that she had received marijuana was upheld where founded upon prior experience, rolling the cigarette herself, seeing what it looked like, and the fact that it made her "high"); Pennacchio v. United States, 263 F. 66 (2nd Cir.), cert. denied, 253 U.S. 497, 40 S.Ct. 588, 64 L.Ed. 1031 (1920) (upheld a habitual opium user's testimony that the substance given to him, and which he used, was in fact opium); State v. Johnson, 54 Wis.2d 561, 196 N.W.2d 717 (1972) (extensive LSD user was qualified to give opinion as whether substance given the user was LSD—in the face of other testimony, adduced from a PH.D in medicinal chemistry, that a person could not identify LSD by the effects the substance had on a user).

In any event, the appellant's assertion that there was no evidence proving the

ther, the furtive purchase of the drugs indicates that it was not a legitimate dispensing of heroin *from* a stamped package. Thus since the Government did not attempt to take advantage of the statu-

tory presumption and since the evidence is sufficient to prove a violation of the statute without the aid of the presumption, the appellant's argument in this respect is without merit.

substance involved was heroin, absent the questioned opinions, is incorrect. In Agueci v. United States, 310 F.2d 817, 828 (2d Cir. 1962), cert. denied, 372 U. S. 959, 83 S.Ct. 1016, 10 L.Ed.2d 12 (1963), the court stated:

"Just as with any other component of the crime, [21 U.S.C. § 174] the existence of and dealing with narcotics may be proved by circumstantial evidence; there need be no sample placed before the jury, nor need there be testimony by qualified chemists as long as the evidence furnished ground for inferring that the material in question was narcotics." *Accord*, United States v. Nuccio, 373 F.2d 168, 174 n. 4 (2d Cir. 1967), cert. denied, 387 U. S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 623 (1968).

█ The evidence clearly indicated that the substance involved was in a powder form. August testified that he sampled the substance and it gave him the same reaction he had experienced when he previously used heroin. This evidence has the tendency of proving the substance in question was in fact heroin. *Cf.* United States v. Roviaro, 379 F.2d 911, 914 (7th Cir. 1967); United States v. DeDominicis, 332 F.2d 207, 209 (2d Cir. 1964); United States v. Nichols, 322 F.2d 681, 684 (7th Cir. 1963), cert. denied, 375 U.S. 967, 84 S.Ct. 485, 11 L. Ed.2d 415 (1964). August testified that he purchased two pounds of the substance in Thailand for $2,600.00, he sold one-half pound to Brittain for $3,000.00. Aleshire testified that she sold a "spoon" of the substance, between ¼ and ⅛ of an ounce, for $300.00. The fact that a high price has been paid for the substance is also evidence tending to indicate that it was in fact heroin. *See* United States v. Fiotto, 454 F.2d 252, 254 (2d Cir.), cert. denied, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972); Toliver v. United States, 224 F.2d 742, 745 (9th Cir. 1955). Aleshire also testified that she received no complaints about the substance she represented as being heroin when she sold it. *See* Toliver v. United States, *supra*, 224 F.2d at

745. Aleshire further testified that she became addicted to heroin by taking the substance given to her by August, and a doctor told her she was addicted to heroin. This further indicates that the substance was in fact heroin. *Cf.* United ed States v. Cox, 462 F.2d 1293, 1304 (8th Cir. 1972). Throughout the period relevant here all of the parties acted consistent with the idea that the substance was in fact heroin, from smuggling the substance into the United States from Thailand to bringing a person from Chicago to St. Louis to "test" the substance.

As the Court said in Toliver v. United States, *supra*, 224 F.2d at 745,

"We find in the record, ample evidence from which the jury could conclude that heroin was involved in the absence of the witness' own opinion. The exhorbitant [sic] price paid for the small amount of substance; the fact it was a powder; that Brown had been a user and had had previous transactions in narcotics with the appellant; that Brown bought the substance as heroin; that Brown sold the substance to his customers as heroin and that none of them 'kicked' or complained, supplied sufficient evidence for the jury to draw the inference that the powder was heroin." *See also* United States v. Morello, 250 F.2d 631, 633–634 (2d Cir. 1957).

Not only was the trial court correct when it allowed August and Aleshire to express their opinions, but there also was other substantial evidence from which the jury could have found that the substance was in fact heroin.

For the reasons hereinbefore expressed, the judgment of conviction is affirmed.

LARAMORE, Senior Judge (concurring in part and dissenting in part).

As to the issue of "expert testimony," I am in concurrence, but as to whether there was a "submissible case" I must respectfully dissent. I accept the facts set out by the majority as reflecting the

relevant facts of this case, but I must dispute the inferences and the legal conclusions based thereon.

The crucial issue presented here is whether the appellant's conduct, as a matter of law, could amount to *aiding and abetting* Agnes Brittain in the *purchase* of the heroin, since the record is barren of any proof that Atkins was, in fact, a purchaser of the heroin. Aiding and abetting is "a rule of criminal responsibility for acts which one assists another in performing." Nye & Nissen v. United States, 336 U.S. 613, 620, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949). "In order to aid and abet another to commit a crime it is necessary that [an appellant] 'in some sort associate himself with the venture, *that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.*'" *Id.*, 336 U.S. at 619, 69 S.Ct. at 769, adopting the language of J. Learned Hand in United States v. Peoni, 100 F.2d 401, 402 (2d Cir. 1938). (Emphasis added.)

In view of the foregoing, it is pertinent to review the inferences drawn by the majority. There are essentially three: (1) Appellant expended time and effort in seeking out a buyer (Brittain); (2) she was interested enough in the transaction that she made a personal introduction and remained at the table thereafter, rather than simply giving one of the parties the name and phone number of the other; (3) appellant's interest in the transaction was not fleeting, in that she continued to discuss it with McWorthy after the transaction was consummated.

Without questioning the validity of these inferences at this point, the crucial question remains what is the legal effect of the evidence and said inferences. While they demonstrate that appellant intentionally introduced a person who wished to assist someone else in selling heroin to a person who had apparently indicated to her that she was interested in purchasing heroin, can such intent to introduce be translated into an intent to aid and abet Brittain in the purchase of heroin? Does the fact that she made a personal introduction illustrate that the subsequent purchase was something which she wished to bring about? Can such an introduction, when there is no further participation, be taken as demonstrating that she sought by her actions to make the purchase succeed? I believe that the answer to all of these questions is no, and that the conduct portrayed herein could not, as a matter of law, constitute aiding and abetting in the purchase of heroin.

The facts disclose that after the introduction there were three additional meetings between the buyer and the seller or his agent before this sale was consummated, yet it is not contended that the appellant participated, assisted or aided in any way in these successive dealings. While the purchase was far from being certain or even likely at the time of the introduction, there is no evidence that Atkins attempted in any manner to see the purchase through or insure that it would succeed. Her remaining at the table, in view of the subsequent negotiations necessary to consummate the purchase and her abstention therefrom, can hardly be taken as efforts to see the purchase succeed.

This point was also brought out in Robinson v. United States, 262 F.2d 645, 649 (9th Cir. 1959) when it concluded:

We cannot find in the evidence before us anything that indicates Robinson (the alleged aider and abettor) *wished to bring about the sale* Lowe made to Cammack. He may very well have, in view of his alleged previous sales, but there is no proof of his wishes as to this sale! There is not the slightest evidence that Robinson ever had *possession* of the narcotic, *participated* in its sale, or *received* any of the proceeds thereof. [Emphasis added.]

In that case, Robinson had directed Cammack to Lowe and twice given him Lowe's telephone number. Robinson's conviction was reversed. The majority distinguishes *Robinson* on the grounds that the defendant therein did not (1)

spend time locating the seller, (2) personally meet with the buyer and seller, and (3) express an interest in the transaction after the consummation of the sale. These are the same grounds on which the majority distinguishes *Morei v. United States,* 127 F.2d 827 (6th Cir. 1942) and *United States v. Moses,* 220 F.2d 166 (3d Cir. 1955), as they stem from the three principal inferences which they conclude to be so incriminating. Thus, said inferences merit closer examination at this point to determine their true distinguishing value and the validity of their basis.

The majority states that "she had to act in an affirmative manner to bring the buyer together with the seller's agent for a meeting * * *," but so did Robinson, Dr. Platt and Moses, when they gave phone numbers or told the parties where they could meet. Certainly, these defendants did not meet the majority's advisement that they "could have rested on the fact that [they were] not aware of anyone wanting to buy [or sell] heroin." Instead, the defendants in the respective cases, which the majority endeavors to distinguish, also engaged in affirmative, purposive acts; *i. e.,* arranging for a buyer and a seller, theretofore unknown to each other, to meet for an illicit transaction. The substantive effect of the various defendant's actions is identical, and the fact that Atkins made a personal introduction is not a relevant difference. The crucial factor which makes Atkins situation indistinguishable from those in *Morei, Robinson* and *Moses,* and which vindicates them from culpability, is the fact that these persons did not share in the criminal intent of the buyers or sellers, as they made no attempt to follow up on the transactions to insure their success. While they had, in effect, brought the principals together, they had acted without interest in the consummation of the sales, and they had left the principal parties to their own intents.

On the basis of Atkins' continued conversations with McWorthy, the majority next infers "that the defendant expressed an interest in the transaction after the consummation of the sale." First, it is significant to note that while McWorthy testified that their conversations included the subject that "we had been burned," she admitted in explaining this statement that she had expected to receive some money for her participation, but that Atkins had said nothing to her about expecting any money. Secondly, the majority does not contend—as clearly they cannot—that such testimony supports the necessary inference that appellant was in collaboration with Brittain. Although such conversations may show appellant's continuing awareness that the transaction was in process and eventually consummated, I fail to see how these conversations demonstrate Atkins' desire to assist in the scheme, efforts to bring it about, or actions on her part to make it succeed. This court has previously noted that "[m]ere association is not sufficient to establish aiding and abetting * * * and it is also established that knowledge that a crime was to be committed and presence at the scene of the crime are generally not sufficient." *Baker v. United States,* 395 F.2d 368 (8th Cir. 1968). "In fact, it has been held that the mere fact that one is present at the scene of a crime, even though he may be in sympathy with the person committing it, will not render him an aider and abettor." *Johnson v. United States, supra,* 195 F. 2d at 675–676. Here, there is not even a contention that the appellant was present at any of the negotiating and consummating transactions after the introduction, much less that she assisted in them in any way or sought by her actions to insure the success of the transaction.

Moreover, it is not explained how appellant's continued conversations and association with McWorthy, an agent for the seller, could amount to aiding and abetting Brittain with the *purchase.* "Any relation to the buyer [here, seller] actually militates against conviction of the charged offense of criminal complici-

ty in selling [here, purchasing]." *Moses*, supra 220 F.2d at 168. Here the evidence shows, if anything, assistance to the seller, *i. e.*, in procuring a buyer, for it is not contended that appellant negotiated with McWorthy for Brittain. The record is clear that after the introduction Brittain dealt directly with Mc-Worthy ·or August. Brittain's only assistance in the purchase came from Aleshire whom she had to call in from Chicago to assist her in testing the heroin. Brittain apparently did not turn to appellant for such assistance, or if she did, appellant obviously refused. Furthermore, the court in *Moses* noted, "[a]lthough the appellant's conduct was prefatory to the sale, it was not collaborative with the seller [here, buyer]." *Id.*, at 168. "[O]ne who has acted without interest in the [buying] cannot be convicted as a [buyer] even though his conduct may in fact have facilitated an illegal sale." *Id.*, at 169. Here there was similarly nothing to show that Atkins was associated with the enterprise of the purchaser or that she had any personal or financial interest in seeing that Brittain purchased the heroin.

Such was not the case in United States v. Tutino, 269 F.2d 488 (2d Cir. 1959) where the facts disclosed that "Richman (the alleged aider and abettor) not only performed an introduction but went to some pains and expense for long distance calls to get the scheme rolling *and to try to complete it* by locating Tutino after his disappearance." *Id.*, at 490. [Emphasis added.] The court thereby found that case distinguishable from *Moses* and affirmed Richman's conviction.

In addition, appellee has referred us only to Mays v. United States, 261 F.2d 662 (8th Cir. 1958) as supporting the contention that appellant's participation constituted aiding and abetting, but I find that it, in fact, illustrates the opposite. In *Mays*, the evidence disclosed that:

> * * * McNealey, the Government's undercover agent, secured an introduction to the [appellant] Mays

under favorable circumstances; that thereafter * * * he entered into a discussion with Mays about the purchase of heroin; and that *Mays told him he could sell him* 100 capsules for $1.75 each. McNealey showed an interest in such offer and arranged to meet Mays at the bar that evening. McNealey reported at the bar at the scheduled time and after waiting a while was approached by Vernita Overton, who told him that Mays had sent a message that the deal was off for the night but to meet Mays the next night at the Riviera Club * * *. On the next night * * ·* McNealey met Mays at the Riviera Club, and was told by Mays that he would receive a telephone call from Mays later that evening. After returning home McNealey received a telephone call from Mays at about 1:15 A.M. * * *, and was told to go to the Turf Grill to pick up his "stuff". McNealey went to the Turf Grill and from there to Berry's room at the Grand Central Hotel. McNealey told Berry that he had seen Mays at the Riviera Club. Berry told McNealey that he had 110 capsules of heroin for him, and *that he was instructed to charge $1.75 a capsule.* Thereupon, McNealey paid Berry $192.50, furnished by the Government, and took delivery of the capsules. *Id.*, at 664, 665. [Emphasis added.]

Based on the foregoing, this court held that "[t]here is ample evidence to support an inference that Mays associated himself with the sale of heroin *and that he sought to bring about the sale.* *Id.*, at 664. [Emphasis added.] I find the *Mays* case readily distinguishable from the case at bar, because the appellant therein did not merely introduce an interested buyer to a seller and stop at that. Instead, he declared that *he could sell him* the desired heroin; he negotiated the price of the sale; he made arrangements for the buyer to meet the seller and when they could not be completed on that night, he persisted in

**318**

seeing the sale through by again making arrangements for contact on the next night; and *he instructed* the seller as to the price at which the heroin was to be sold. Such actions clearly support the necessary inference that *he sought to bring about the sale,* thereby providing the requisite criminal intent.

I agree with *Mays,* and like *Tutino* find it illustrative that something more than an introduction is necessary to constitute aiding and abetting. Here, unlike *Tutino,* there was no showing that the appellant "went to some pains and expense * * * to get the scheme rolling *and to try to complete it * * *.*" Nor was there evidence, as in *Mays,* that she sought by her actions to make the purchase succeed.

On the basis of the foregoing, I find it clear that appellant's conduct could *not* as a matter· of law constitute aiding and abetting in the purchase of heroin. Thus, the case should not have been presented to the jury, and the motion for directed verdict of acquittal on this count should have been sustained.