**UNITED STATES of America**

v.

**Ralph T. WHITE.**

**No. F CR 88–07–02.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

June 28, 1988.

David H. Miller, Asst. U.S. Atty., Fort Wayne, Ind., for plaintiff.

John C. Grimm, Grimm & Grimm, Auburn, Ind., for defendant.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court subsequent to a bench trial held on May 12, 1988. At the conclusion of that trial, this court ordered the parties to submit post-trial briefs. Final arguments were heard on June 13, 1988. Those briefs having been received, and final arguments having been heard, this court hereby enters its Findings and Conclusions pursuant to Rule 23(c) of the Federal Rules of Criminal Procedure.

On March 10, 1988, an indictment was returned against defendant Ralph T. White and his co-defendant, Lisa (Ausderman) Johnson, in this court. The defendants were jointly charged with intentionally and unlawfully distributing or aiding and abetting in the distribution of less than 500 grams of cocaine, a Schedule II narcotic drug controlled substance, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1).

Immediately prior to the bench trial held on May 12, 1988, defendant Lisa Johnson pleaded guilty in open court to the charge contained in the indictment.

The events leading up to defendants' indictment arose as a result of a drug transaction which occurred during the evening hours of January 13, 1988, at the intersection of Lake Avenue and Anthony Boulevard in Fort Wayne, Indiana. On that date, approximately one-half of an ounce of cocaine was exchanged for $1,000. Present at the scene were the co-defendants together with Emmitt Carney.

Emmitt Carney is an undercover criminal investigator for the United States Treasury Department, Bureau of Alcohol, Tobacco and Firearms. Mr. Carney has been so employed for the past 16 months and prior to that time had been employed as a Kentucky state trooper for some four and one-half years.

Agent Carney first met with defendant White on January 12, 1988. Prior to that date, Agent Carney had been informed that Mr. White was an ex-police officer who was supposedly dealing in cocaine and thus defendant White had been targeted as a potential subject for investigation.

The first meeting between Agent Carney and Mr. White on January 12, 1988, took place in front of a residence located at 1117 Cottage Street in Fort Wayne, Indiana. Agent Carney was introduced to defendant White as a "money man" from Indianapolis who wanted to get into the cocaine/crack business in Fort Wayne. To do that, Agent Carney indicated to the defendant that he needed a contact who could supply him with "some good stuff." (TR. 12). Agent Carney asked defendant White "for guidance more or less as to where [he] could probably open up shop in the City of Fort Wayne without stepping on anybody's toes or drawing any attention to [him]." (*Id.*) In return for his assistance, Agent Carney indicated that he would give defendant White money in order to enable the defendant to finance his dream of opening a karate studio.

At that initial meeting on January 12, 1988, defendant White indicated that he knew someone who could supply Agent Carney with cocaine and that it was "pure stuff [which] hadn't been stepped on." (TR. 12). Defendant White also indicated that the prevailing price for half an ounce of cocaine in the Fort Wayne area was approximately $1,000. Prior to terminating their initial conversation, Agent Carney told the defendant that he would probably be in contact with him the next day.

After the meeting, defendant White called Lisa Johnson, an acquaintance for some four to six years, and told her that he had someone who wanted to buy a half an ounce of cocaine and asked her if she could get the cocaine for him. She responded in the affirmative and defendant White told her that he would call back as to when and where the transfer would take place.

On January 13, 1988, Agent Carney again drove to the residence located at 1117 Cottage Street and met with defendant White. Shortly before getting into Agent Carney's automobile, Agent Carney asked the defendant if he knew where Agent Carney could get a half an ounce of cocaine. The defendant responded in the affirmative and indicated that he would have to make a telephone call. Defendant White then called Lisa Johnson and arranged for a meeting to occur shortly thereafter at the intersection of Lake Avenue and Anthony Boulevard in the parking lot of a Handy Dandy market. After making that telephone call, defendant White returned to Agent Carney's vehicle and informed Agent Carney of the particulars about the meeting. The two then proceeded to the intersection of Lake and Anthony and awaited the arrival of Lisa Johnson who was to be driving a white car.

Approximately 10 minutes after their arrival, Lisa Johnson arrived at the parking lot together with a male who was driving the white vehicle. They backed into the parking lot to the right of Agent Carney's automobile. Lisa Johnson then got out of her vehicle and Mr. White got out of Agent Carney's car. Prior to exiting the vehicle, Agent Carney gave defendant White $1,000 in purchase money which defendant White proceeded to count.

Once outside the respective vehicles, the co-defendants walked to the back of Agent Carney's automobile and engaged in conversation. Both then returned to Agent Carney's car and told him that Lisa Johnson needed a ride home. Lisa Johnson got in the back seat while Mr. White returned to the front passenger seat.

As the threesome approached the intersection of Lake and Crescent Avenues en route to Lisa Johnson's residence, Lisa Johnson tapped defendant White on the shoulder and said, "Here you go," and exchanged with defendant White the one-half ounce of cocaine for $1,000. As defendant White handed Lisa Johnson the money he jokingly told her "here's the 900 or 800 dollars." (TR. 15). The trio then continued on to Lisa Johnson's residence. As Lisa Johnson got out of the car, Agent Carney thanked her and told her it was nice doing business with her.

Having dropped off Lisa Johnson (and the $1,000), Agent Carney took the one-half ounce of cocaine from defendant White, put it in an army field jacket, got out of the vehicle, and put the jacket containing the cocaine in the trunk of his car. Agent Carney then drove defendant White back to the residence located on Cottage Street. Knowing that defendant White was "kind of down and out on his money" and trying to "play the role of the big spender," Agent Carney gave defendant White a $20 bill. (TR. 17). Perhaps not seeing a bill containing Andrew Jackson's portrait on it as indicative of a "big spender," defendant White accepted the $20 bill as gas money. Before defendant White left the vehicle, Agent Carney asked him how much time would be needed to come up with "serious weight" and defendant White replied that there was generally "a pretty good supply on hand." (TR. 17–18).

With the transaction concluded, Agent Carney drove to the parking lot of the Federal Building in Fort Wayne, Indiana and met with now Deputy Chief Gregg Lewis and Officer Flueckiger, both of the Fort Wayne Police Department. After showing them the army jacket containing the cocaine, the three then proceeded to Lisa Johnson's residence so that the Fort Wayne police officers could be given the exact location of her residence and conduct an investigation. They then drove to the Fort Wayne police station and placed the cocaine in the evidence vault of the narcotics room. Subsequent testing at the state police lab in Fort Wayne revealed that the substance exchanged between Johnson, White and Carney on the evening of January 13, 1988, was in fact cocaine.

At the time of the transaction, defendant White was not a duly authorized police officer although he had been a Fort Wayne police officer for five years previously. During the trial in this cause, defendant White testified that he had never sold a controlled substance. He did, however, admit that he had previously purchased cocaine from Lisa Johnson. According to Lisa Johnson, a couple of weeks before the January 13, 1988 transaction, defendant White had purchased from her approximately one-eighth ounce of cocaine for $340. Defendant White also admitted that he had purchased cocaine for Nathaniel Tubbs who, apparently unknown to the defendant, was a confidential informant in December of 1987.

Based upon the events which occurred on January 12 and 13, 1988, co-defendants Lisa Johnson and Ralph T. White were jointly charged with intentionally and unlawfully distributing or aiding and abetting in the distribution of cocaine. At trial, it became abundantly clear that the government's theory against defendant White was that he aided and abetted in the distribution of cocaine. Defendant White has moved for acquittal on the grounds that the government's evidence was insufficient to convict him as an aider or abetter. Alternatively, defendant White levels the defense of entrapment as a ground for acquittal. Neither argument, in this court's view, is meritorious.

The aiding and abetting statute, 18 U.S. C. § 2, punishes as principals those who aid and abet a crime. *See United States v. Galiffa,* 734 F.2d 306, 312 (7th Cir.1984). "In order to find someone guilty of aiding and abetting a crime, the evidence must

demonstrate—according to Judge Learned Hand's formulation, which this Circuit has adopted—that the defendant was associated with a criminal venture, that he participated in it as something he wished to bring about and that he sought by his actions to make it succeed." *United States v. Pope,* 739 F.2d 289, 291 (7th Cir.1984); *accord United States v. Licursi,* 525 F.2d 1164, 1167 (2d Cir.1975). "Thus, the prosecution must prove (1) association, i.e., that the defendant shared the criminal intent of the principal; and (2) participation, i.e., some overt act designed to aid in the venture's success." *Pope, supra,* at 291, *quoting United States v. Beck,* 615 F.2d 441, 448–49 (7th Cir.1980); *United States v. Greer,* 467 F.2d 1064, 1069 (7th Cir.1972), *cert. denied,* 410 U.S. 929, 93 S.Ct. 1364, 35 L.Ed.2d 590 (1973). "Proof of this criminal intent may be inferred from the surrounding circumstances," *United States v. Gabriel,* 810 F.2d 627, 636 (7th Cir.1987), and thus "need not be by direct evidence...." *Pope, supra,* at 291.

■ In the present matter, it is clear that the government has established beyond a reasonable doubt that defendant White aided and abetted in the distribution of cocaine from Lisa Johnson to Agent Carney. Defendant White arranged for Agent Carney to acquire one-half ounce of cocaine and in order to facilitate the transfer of that cocaine, defendant White telephoned co-defendant Lisa Johnson on January 12, 1988 and inquired as to the availability of cocaine. After defendant Johnson informed defendant White that the cocaine was available, defendant White indicated that he would be in touch later. On January 13, 1988, Agent Carney met with Ralph White at 1117 Cottage Avenue and inquired as to whether or not defendant White had made arrangements to get one-half ounce of cocaine. Defendant White then went inside the house and called Lisa Johnson and arranged for a meeting to occur at the intersection of Anthony Boulevard and Lake Avenue. Prior to exiting Agent Carney's automobile at that intersection, defendant White was given $1,000 with which to purchase the cocaine. While en route to Lisa Johnson's residence, defendant White gave Lisa Johnson $1,000 in exchange for the one-half ounce of cocaine. Subsequently, Agent Carney acquired the cocaine from defendant Ralph White.

The government's theory in this case is that a defendant who knowingly sets up a narcotics sale between someone who he knows to be a willing source of narcotics and someone who he knows to be a willing buyer, for the purpose of facilitating a transaction between the two, is guilty of aiding and abetting the distribution of narcotics. That theory has been advanced successfully by the government on numerous occasions in the past. For example, in *United States v. Tucker,* 552 F.2d 202, 204 (7th Cir.1977), "[t]he government's theory of criminality [was] that Tucker knowingly set up a sale by introducing Adams, who he knew to be a willing source, for the purpose of facilitating a transaction between the two" and "if proven this theory would sustain the conviction ..." *Id.* at 204. Although the defendant's conviction was reversed on other grounds, the court in *Tucker* noted in *dicta* that the aiding and abetting standard had been met even though the defendant was not present at the scene of the sale and there was no evidence that he received any of the proceeds from the sale.

Another case worthy of note with respect to the amount of involvement needed in order to support a conviction for aiding and abetting is the United States Court of Appeals for the Second Circuit's decision in *United States v. Licursi,* 525 F.2d 1164 (2d Cir.1975). There, an undercover agent called the defendant seeking to purchase drugs. The defendant indicated that a friend of his had cocaine to sell and it was mutually agreed that the agent and the seller would meet at the defendant's apartment. Arrangements for the sale were made in the defendant's presence and the defendant repeatedly assured the agent that the cocaine to be purchased would be of good quality. Subsequently, the defendant and the seller traveled to pick up the cocaine and telephoned the agent to come and meet for the sale. The agent balked at the arrangements and told the defendant to

give the seller his telephone number so that other arrangements could be made. The defendant's involvement ended at that point and the next day the seller and the agent got together and the sale of cocaine was consummated. The defendant was found guilty of aiding and abetting in the distribution of narcotics. On appeal, the Second Circuit affirmed defendant's conviction and in doing so noted that the defendant had "participated in the narcotics transaction with great zeal and evidenced considerable interest in its success." *Id.* at 1165.

Also worthy of note is the United States Court of Appeals for the Eighth Circuit's decision in *United States v. Atkins*, 473 F.2d 308 (8th Cir.1973). There, the defendant was asked by an acquaintance if she knew anyone who would like to purchase heroin. Later, the defendant met with the acquaintance at a bar to introduce a possible buyer whereupon, in defendant's presence, conversations ensued relating to the possibility of a sale of heroin. Later meetings outside the defendant's presence ultimately culminated in the sale of heroin. Afterwards, the seller met with the defendant and discussed how the seller had been "burned" on the deal. Citing the purposeful attitude of the defendant in encouraging and facilitating the unlawful purchase, the United States Court of Appeals for the Eighth Circuit held that there had been enough evidence to convict for aiding and abetting. In doing so, the court noted that after being asked if she knew of anyone who would be interested in purchasing heroin, the defendant "was interested in more than casually naming names; she was willing to actively seek out buyers ..." when "it would have been much safer to simply introduce the parties and leave ..." *Id.* at 310–11.

Similarly, in *United States v. Juarez*, 566 F.2d 511 (5th Cir.1978), the United States Court of Appeals for the Fifth Circuit dealt with an appeal of a trial court's denial of a motion for acquittal in an aiding and abetting narcotics case. There, an undercover agent called an auto parts store operated by an individual suspected of dealing heroin. The agent spoke to the defendant instead of the suspected dealer and during the course of recorded conversation the sale of "tires" (a code name for heroin) was discussed. The defendant told the agent that the price would be determined by the "other guy" and told the agent to call back later. When the agent later called, the suspected dealer answered the phone and arrangements for a sale were made. Based on the inferences from the evidence, the court in *Juarez* opined that a reasonable jury could convict the defendant of aiding and abetting in the sale of narcotics. Since the defendant stated that everything would be ready when the agent called back and since everything was in fact ready when the agent did call back, the jury could properly conclude that the defendant and dealer got together and discussed the deal thereby establishing that the defendant was partially responsible for the sale of heroin.

The foregoing cases establish that there need not be a great deal of participation by a defendant in order for that defendant to be convicted of aiding and abetting a drug sale. All that need be shown is that the defendant acted with criminal intent and design to assist the perpetrators. Here, as in *Tucker, supra,* and *Atkins, supra,* the government's theory of criminality was that the defendant knowingly set up a drug sale by personally introducing a desirous buyer to a willing seller even though, as in *Atkins,* there was no proof that the defendant encouraged the buyer. Like *Juarez, supra,* the evidence establishes that the defendant communicated a drug order to the dealer to set up a sale and in doing so aided and abetted in the transfer of narcotics. In short, the defendant's level of participation in the cocaine sale in this case clearly rises to the level of aiding and abetting. Defendant contacted his co-defendant at the behest of Agent Carney, defendant later contacted his co-defendant and arranged for a meeting in order to consummate the sale of cocaine, defendant attended that meeting during which the sale was transacted, and defendant exchanged the $1,000 he was given from Agent Carney with his co-defendant for the one-half ounce of cocaine. As in *Atkins,* "[t]his

evidence unequivocally demonstrates that the [defendant] was interested in more than casually naming names; [he] was willing to actively seek out buyers." 473 F.2d at 310.

■ In reaching the foregoing conclusions, this court is not unmindful of defendant's argument to the effect that he should not be found guilty of aiding and abetting because he did not act as an agent for the seller, Lisa Johnson, but, instead, if anything acted on behalf of the buyer, Agent Carney. That is, defendant asserts that the cases relied upon by the government are distinguishable in that in those cases the person found guilty of aiding and abetting acted in concert with the seller and not the buyer.

There are several reasons why defendant's argument on this score is not persuasive. While Lisa Johnson testified that defendant Ralph White was not her agent, she also testified that she would not have dealt directly with Agent Carney because she did not know him. It was only after Ralph White made the initial contact that Lisa Johnson acquiesced in the sale to Agent Carney. Thus, it was only after defendant White associated himself with the criminal venture and participated in it as something he wished to bring about that the sale occurred.

Moreover, "the government need not establish an agreement between the principal and the aider or abetter in order to support a conviction for aiding and abetting the commission of a crime." *United States v. Torres*, 809 F.2d 429, 433 (7th Cir.1987). "It is this fact, indeed, that distinguishes aid and abet liability from conspiracy." *United States v. Beck*, 615 F.2d 441, 449 n. 9 (7th Cir.1980). "Conspiracy requires proof of agreement, aiding and abetting does not." *Id.* citing *United States v. Cowart*, 595 F.2d 1023 (5th Cir.1979). "Aiding and abetting has a broader application [than conspiracy] ... [i]t makes a defendant a principal when he consciously shares in any criminal act whether or not there is a conspiracy." *Nye and Nissen v. United States*, 336 U.S. 613, 620, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949). Here, the government

proved beyond a reasonable doubt that defendant White aided and abetted in the transfer of cocaine from Lisa Johnson to Agent Carney.

■ This court is also not unmindful of defendant's suggestion that he should not be found guilty of aiding and abetting because he received no remuneration for his participation in the transaction. While this court is inclined to agree that the $20 given from Agent Carney to defendant White was for either gas money or was the gratis of a "big spender" and was not for services rendered by White, there still remains Agent Carney's promise that he would help finance defendant White's dream of opening a karate studio. Certainly, the inference to be drawn from such evidence is that if, and only if, defendant made the arrangements would he receive Carney's financial backing and thus it was in his interest to consummate the deal.

Yet even if defendant received no compensation for his efforts in arranging the sale of cocaine, the defendant could still be convicted of aiding and abetting the sale of narcotics. "Although the existence of a stake or interest in the outcome of the transaction is a factor to be considered in an aiding and abetting prosecution, it is not a controlling factor." *United States v. Winston*, 687 F.2d 832, 835 (6th Cir.1982). "Requiring a participant in a criminal venture to have a stake in the outcome of the crime would limit severely the reach of the aiding and abetting offense and would restrict unduly the enforcement of law such as those dealing with drug enforcement." *Id.* Thus, any contention by the defendant that he must have had an interest or stake in the transaction before he could be convicted for aiding and abetting must be rejected.

■ Defendant has also raised the affirmative defense of entrapment. Since the recent Supreme Court decision in *Mathews v. United States*, — U.S. —, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988), it is clear that even if the defendant denies one or more elements of the crime he may still raise an entrapment defense.

"For a defendant to raise the entrapment defense, he or she must, 'produce evidence of both the government's *inducement* and his own lack of *predisposition*. Once a defendant accomplishes this, the burden shifts to the government to prove beyond a reasonable doubt that the defendant was predisposed or that there was no government inducement.'" *United States v. Hawkins*, 823 F.2d 1020, 1024 (7th Cir. 1987), *quoting United States v. Perez-Leon*, 757 F.2d 866, 871 (7th Cir.), *cert. denied*, 474 U.S. 831, 106 S.Ct. 99, 88 L.Ed. 2d 80 (1985) (emphasis added). "Both the inducement and predisposition inquiries require an examination of the facts." *Hawkins, supra*, at 1024.

"To prove inducement, a defendant must put forth some evidence showing that he or she would not have committed the crime had the particular attraction or lure that the government held out not existed." *Hawkins, supra*, at 1024. "The term 'predisposition' refers to whether the defendant had a readiness and willingness to commit the offenses charged, or whether the government 'implant[ed] in the mind of an innocent person' the disposition to commit the offense." *United States v. Fields*, 689 F.2d 122, 124 (7th Cir.1982), *quoting Sorrells v. United States*, 287 U.S. 435, 442, 53 S.Ct. 210, 212, 77 L.Ed. 413 (1932). "Predisposition may be established by evidence of a defendant's personal background, and by evidence of a defendant's conduct before or after the commission of the offense." *Fields, supra*, at 124 citing *United States v. Carreon*, 626 F.2d 528 (7th Cir.1980); *United States v. Townsend*, 555 F.2d 152 (7th Cir.), *cert. denied*, 434 U.S. 897, 98 S.Ct. 277, 54 L.Ed.2d 184 (1977).

In the present matter, it is clear that Agent Carney solicited the commission of the crime charged. But, "mere solicitation is not enough to show entrapment." *United States v. Perry*, 478 F.2d 1276, 1278 (7th Cir.), *cert. denied*, 414 U.S. 1005, 94 S.Ct. 363, 38 L.Ed.2d 241 (1973). Even if the court assumes that defendant has shown he was induced, that showing alone does not make out an entrapment defense if the defendant was ready and willing or was awaiting a propitious opportunity to commit the offense—that is, if the defendant was predisposed to commit the offense.

"A predisposed defendant is one who is ready and willing to commit an offense apart from government encouragement, and not an innocent person in whose mind the government implanted a disposition to commit an offense." *United States v. Gabriel*, 810 F.2d 627, 637 (7th Cir.1987); *accord Hawkins, supra*, at 1024. A defendant who raises an entrapment defense cannot object "to an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue." *Sorrells, supra*, 287 U.S. at 451, 53 S.Ct. at 216. To show predisposition, the government may attempt to show that at the time of the transaction "the defendant had engaged in conduct which was in violation of the criminal law at the time." *United States v. Berry*, 661 F.2d 618, 620 (7th Cir.1981). "Indeed in *United States v. Perry, [supra]*, [the United States Court of Appeals for the Seventh Circuit] approved of broad inquiry into a defendant's reputation to refute an entrapment defense and rejected the argument that evidence to show predisposition should be limited to a showing of prior convictions." *Berry, supra*, at 620. Thus, "[o]n the issue of predisposition any pertinent fact whether known to the authorities at the time of the offense or discovered later would be relevant." *Perry, supra*, at 1278–79.

In the present matter, the government has established beyond a reasonable doubt that the defendant was predisposed to commit the offense charged. By defendant's own testimony he had twice before in recent months acquired cocaine for Nathaniel Tubbs. The evidence also established that a couple of weeks before January 13, 1988, the defendant called Lisa Johnson and asked her to acquire an eighth ounce of cocaine for him which she did and which she sold to the defendant for $340. Clearly, defendant was not opposed, indeed was predisposed, towards handling illegal drugs.

With respect to defendant's claim of entrapment, this court is of the view that Agent Carney merely provided an opportu-

nity for defendant to aid and abet in the distribution of cocaine. "That the government merely offered an opportunity to commit a crime, coupled with what can at most be described as mild inducement, does not support a claim of entrapment." *United States v. Thoma*, 726 F.2d 1191, 1198 (7th Cir.1984).

### Conclusion

On the basis of the foregoing, this court finds the defendant GUILTY AS CHARGED in the Indictment in the above entitled cause. The Clerk of this court accordingly shall enter a JUDGMENT OF CONVICTION.